STATE OF NEBRASKA, APPELLEE, V. VINCENT GARZA, APPELLANT.

191 N. W. 2d 454

Filed November 5, 1971. No. 37958.

Frank B. Morrison and Bennett G. Hornstein, for appellant.

Clarence A. H. Meyer, Attorney General, and Bernard L. Packett, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, NEWTON, and CLINTON, JJ.

BOSLAUGH, J.

The defendant appeals from a conviction for forcible rape. The principal assignment of error relates to the sufficiency of the evidence to sustain the conviction.

The prosecuting witness was Gerda E. Galeckas, a high school student, 17 years of age. She testified that after school on September 4, 1970, she went to Glenda Myers' house where she did some drinking and participated in a game in which she removed some of her clothing. She left this house at about 10 p.m. and started to walk home with Arnold Phillips and Ronald Bartlett.

When Gerda was nearly home, an automobile driven by the defendant came by and Gerda and Ronald were invited to go riding. The defendant's brother, Steve Garza, and two other men were in the automobile. Ronald went over to the automobile and talked to the occupants and then came back and asked Gerda if she wanted to go riding. Ronald and Gerda entered the car, and after driving around for about 5 minutes the de-

fendant stopped the car and Ronald left the automobile. The defendant drove away and eventually stopped in Mandan Park. The three other occupants then left the automobile so that Gerda and the defendant were alone in the car.

Gerda testified that the defendant began to kiss her neck and placed his hands on her chest area. When she tried to push him away he struck her side with his fist and said: " 'Next time I will break your jaw.' " The defendant then held Gerda by her left arm and told her to get out of the car. They walked down a trail in the park and the defendant began kissing Gerda again. When she asked him to stop he choked her. When she started to cry out he said: " 'Stop, I will kill you.' " They stopped near a ledge and the defendant asked Gerda what she "had to live for." He then ordered her to remove her blouse. When she asked if she had to, he choked her again. They went on farther down the trail and the defendant ordered her to remove her undergarments. Every time Gerda would ask or say anything the defendant would hit or choke her. The defendant told Gerda to get down on the ground and he then had sexual intercourse with her. They returned to the automobile and she was taken to Glenda Myers' house.

Ronald Bartlett was not at Glenda Myers' house, so Gerda walked over to the Bartlett home. She found Ronald there and the two of them returned to Glenda Myers' house. Gerda's mother found her there at about 8:30 the next morning and took her home. Later Gerda's mother took her to the police station and to the office of Dr. James E. Ryder.

Dr. Ryder testified that he examined Gerda and found 3 linear bruised areas on her neck and several bruised areas on her thighs. He also found abrasions of the labia minora on both sides and a fresh laceration of the hymen but no sperm. Dr. Ryder stated that he thought Gerda

had engaged in sexual intercourse within the last 12 hours.

The defendant testified that he was 28 years of age; that he was not employed; and that he was living with his mother and father. His wife and one child were living in Missouri. He had a previous felony conviction.

The defendant further testified that Ronald Bartlett asked to be taken to Twentieth and Madison Streets so that Ronald could pick up a tape player; that he parked the car in Forest Park in Sarpy County, not in Mandan Park in Douglas County; that he tried to kiss Gerda but stopped when she asked him to leave her alone; and that she said she thought three of the fellows at Glenda Myers' had sexual intercourse with her. The defendant testified that he did not have sexual intercourse with Gerda at any time and that after they left the park he went home.

Vern Pokorski, called by the defendant, testified that he was at Glenda Myers' house at about 6:30 p.m., on September 4, 1970, and again between 9 and 10 p.m. When he returned to the house Gerda was in the basement lying on a bed. Gerda had passed out, and he helped take her outside where she revived. Gerda came back into the house yelling that she was going to get somebody for rape. Gerda then left the house and returned around 11 p.m., saying she was going to get "Garza" for rape.

In rebuttal the State called David Flowers, Marion Breland, and Ronald Bartlett. David Flowers testified that he was at Glenda Myers' house between 8 and 9 p.m., on September 4, 1970. He went downstairs and saw that Gerda and the others were playing some kind of a game. He went back to the living room, and about 5 minutes later Arnold Phillips and Marion Breland brought Gerda up the stairs. Gerda had been drinking and was dazed but was fully dressed. David testified that Gerda did not say anything about being raped or that she was going to get someone for raping her.

Marion Breland testified that he was at Glenda Myers' house on the afternoon of September 4, 1970. Marion testified that there was no sexual activity going on and no talk about sex. He was present in the basement at the time Gerda passed out and he helped take her outside the house. He did not hear Gerda say anything about being raped.

Ronald Bartlett testified that he was at Glenda Myers' house on the evening of September 4, 1970. His testimony was similar to that of David Flowers and Marion Breland as to what took place before he and Gerda left Glenda Myers' house.

Ronald testified that he and Gerda had nearly reached her home when the defendant came by in his car. The car stopped near them and Steve Garza called him over to the car. Ronald said that he did not want to go riding with them but that the defendant asked him to try to get Gerda into the car. Ronald then talked to Gerda and they both entered the car.

Ronald testified that the defendant stopped in Albright Park and that he and the defendant and Steve Garza got out of the car. The defendant told Ronald that they would drive around awhile and then come back for him. Ronald said that he did not say much because he was afraid of the defendant. The defendant then drove off with Gerda in the car. Ronald denied that he had asked the defendant to take him to Twentieth and Madison Streets so that he could pick up a tape recorder. Ronald testified that Gerda came to his house about 1½ or 2 hours after he last saw her at Albright Park. His testimony then corroborated that of Gerda as to what happened after that. Ronald testified that Gerda told him what had happened that evening.

The evidence for the State which has been summarized was sufficient, if believed, to permit the jury to find the defendant guilty of forcible rape. The evidence was in conflict and there were discrepancies in the testimony of some of the witnesses called by the State.

These were matters to be resolved by the jury. In determining the sufficiency of the evidence to sustain the conviction in a criminal prosecution, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, or weigh the evidence. State v. Sheldon, 179 Neb. 377, 138 N. W. 2d 428.

With respect to corroboration, it is not essential that the prosecutrix be corroborated by the testimony of other witnesses as to the particular act constituting the offense. It is sufficient if she is corroborated as to material facts and circumstances which tend to support her testimony and from which, together with her testimony as to the principal fact, the inference of guilt may be drawn. Texter v. State, 170 Neb. 426, 102 N. W. 2d 655.

During the direct examination of the complaining witness, and after she had testified in detail as to what had happened, she was asked a leading question which amounted to a summary of her testimony and a statement as to the ultimate fact that she had been raped by the defendant. An objection that the question invaded the province of the jury, made after the answer had been received and without a motion to strike the answer, was overruled. Although the question was improper, under the circumstances in this case the ruling was within the discretion of the trial court and was not prejudicial to the defendant.

The defendant also complains that Dr. Ryder should not have been permitted to state that he thought the prosecuting witness had sexual intercourse within the last 12 hours because the question did not require that his opinion be based upon reasonable medical certainty. The objection, which was overruled, asserted lack of foundation.

Dr. Ryder had previously testified as to his examination of the complaining witness and the objective findings which he had made. The foundation for testimony as to his opinion was adequate, and his answer expressed a positive opinion not based upon mere possibilities. Al-

though the form of the question may be criticized, there was no substantial prejudice to the defendant under the circumstances.

The judgment of the district court is affirmed.

AFFIRMED.