STATE OF NEBRASKA, APPELLEE, V.
ROBERT E. WATKINS, APPELLANT.

301 N.W.2d 338

Filed January 30, 1981.   No. 43531.

Matthew Hanson for appellant.

Paul L. Douglas, Attorney General, and Shanler D. Cronk for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BRODKEY, J.

Robert E. Watkins, defendant and appellant herein, appeals to this court from his conviction by the District Court of Saline County, Nebraska, of first degree sexual assault in violation of Neb. Rev. Stat. § 28-319(1)(c) (Reissue 1979). The case was tried before a jury on March 20, 1980, which found the defendant guilty of the sexual assault of his stepdaughter, a minor child born December 28, 1968. The court sentenced him to a term of from 1 to 5 years, determined that the defendant was a mentally disordered sex offender, and committed him to the Lincoln Regional Center until such time as it is determined that the defendant is no longer a mentally disordered sex offender or until he has received the maximum benefit of treatment.

The defendant's principal assignments of error on appeal to this court are that the District Court erred in allowing the prosecutrix and her mother to testify as to the nature and details of the sexual assault complained; and by allowing the parties to testify to the facts and details of an alleged sexual assault which occurred on December 31, 1979.

At the trial the complaining witness testified as to her sexual molestation by the defendant, age 33, shortly after Thanksgiving of 1979. When asked why she did

not tell her mother about the assault until after Christmas, the witness replied: ". . . because he told me if I told, he would go to jail and I would go to a foster home and I'd never get to see my mother or speak to her again.

"Q. Were you afraid of going to a foster home?

"A. Yes, because I went to one before and I didn't like it."

She was also permitted to testify in detail as to a subsequent sexual assault by the defendant that occurred on the evening of December 31, 1979, which was the anniversary of the marriage of her mother and the defendant. The witness was asked whether she talked with her mother after the second assault, and she testified that the following conversation took place in the evening of January 1, 1980: "Well, that night, she was looking kind of sad and everything and I asked her what was wrong, and she goes, she just sits there and I said, is it about my brother and she said, no. Is it about my sister? And she goes no. Is it about me, no. Is it about my father, and she said that she didn't love him and I said, 'Are you going to get a divorce with him?' And she said, 'I don't know.' And I said, 'Well, if you are, I guess I will tell you,' and I told her what he did."

Mrs. Watkins testified that upon learning of the assault upon her daughter, she went to the Crete police station and filed a complaint against her husband. Upon her return home, the victim told her mother about the sexual assault which occurred shortly after Thanksgiving. Mrs. Watkins testified that she then confronted her husband:

". . . I told him that he had been bothering [the victim] again, and that that was it. That I couldn't trust him anymore and that our marriage was over and I just, you know, and he started to deny it and then I started naming off to him the things that she told me he had done to her.

"Q. What did you name?

"A. Well the things that happened after Thanksgiving, [detailing the sexual acts performed upon her by the defendant].

"Q. You told him that?

"A. Yeah.

"Q. And then what happened?

"A. He didn't deny it anymore

"Q. Can you remember what he said, as close as you can remember, can you tell the Court what he said?

"*A. Well, he said that he shouldn't have done those things to* [the victim], *that he was sorry for them, and that he needed help, that he had been sick for a long time, and he didn't realize it, but that he needed help and for me not to throw him away but to stay beside him, stand beside him and try to work with him.*" (Emphasis supplied.)

Mrs. Watkins further testified that after she put the girls to bed in her room, she stayed up and talked with the defendant until about 2 a.m. The following morning, January 2, 1980, Chief James Roche of the Crete police department came to the Watkins house to inquire further as to Mrs. Watkins' complaint. Mrs. Watkins testified that when she went to look for her husband, he was not in the house and the car was missing.

Chief Roche testified that after his interview with the victim and Mrs. Watkins, he tried to locate the defendant at several locations throughout the city. He stated that the Watkins car was found abandoned several blocks from the defendant's residence. Chief Roche testified that he contacted the manager of the bus station in Crete, and was told that a man matching the defendant's description had departed on the morning bus en route to Denver, Colorado. He was asked by the prosecutor: "What did you do then?"

"A. I asked Mr. Hier to give me an itinerary or where the bus would be stopping at various locations throughout the state and he advised me that the bus was currently in Exeter or somewhere, and that the next scheduled stop would have been in Hastings, Nebraska, and

so I — the time was about 11:30 or in that neighborhood and I think the bus was to be in Hastings in about thirty or forty minutes. So I contacted Captain Lyle Dunham of the Hastings Police Department and advised him that I believed that Mr. Watkins was on the bus and that I had probable cause to believe that he had committed a crime of sexual assault and that I wished him to be arrested.

"Q. Did you receive a report back from Hastings at anytime?

"A. . . . about 1 p.m., I received a call back from the Hastings Police Department that they had Mr. Watkins in custody."

The rule is well established in this state that in a prosecution for sexual assault, the prosecutrix may testify in chief on direct examination, if within a reasonable time under all the circumstances after the act was committed she made complaint to another, to the fact and nature of the complaint, but not as to its details; and that others may likewise testify in chief to such fact and nature of the complaint, but not as to its details. *State v. Chaney*, 184 Neb. 734, 171 N.W.2d 787 (1969); *Sherrick v. State*, 157 Neb. 623, 61 N.W.2d 358 (1953).

This court has also stated that one to whom the complaining witness has complained may testify to the fact and nature of the complaint if the complaint was made voluntarily and without unreasonable or inconsistent delay. See, *State v. Deardurff*, 186 Neb. 92, 180 N.W.2d 890 (1970); *Texter v. State*, 170 Neb. 426, 102 N.W.2d 655 (1960). With respect to corroboration, however, the rule is that it is not essential that the prosecutrix be corroborated by the testimony of other witnesses as to the particular act constituting the offense. It is sufficient if she is corroborated as to material facts and circumstances which tend to support her testimony and from which, together with her testimony as to the principal fact, the inference of guilt may be drawn. *State v. Garza*, 187 Neb. 407, 191 N.W.2d 454 (1971);

*Onstott v. State*, 156 Neb. 55, 54 N.W.2d 380 (1952).

The testimony, as presented by the victim and her mother on direct examination, went into detail as to the nature of the assault committed around Thanksgiving, and also a subsequent sexual assault which occurred on December 31, 1979. Defendant contends that these statements given by the victim to her mother were not "spontaneous, unpremeditated, or so closely connected with the act as to be part of the res gestae." See *State v. Chaney, supra*.

It is clear from the record that the defendant in this case had both the opportunity and inclination to commit the offense; and we have held that such opportunity and inclination on the part of the defendant may be considered in determining whether there has been sufficient corroboration. *Miller v. State*, 169 Neb. 737, 100 N.W.2d 876 (1960); *Onstott v. State, supra; Frank v. State*, 150 Neb. 745, 35 N.W.2d 816 (1949); *Pew v. State*, 164 Neb. 735, 83 N.W.2d 377 (1957).

In addition, we have present in this case the testimony of defendant's wife regarding the admission made by the defendant to her when she confronted him about his conduct with the victim: "[T]hat he shouldn't have done those things to [the victim], that he was sorry for them, and that he needed help, that he had been sick for a long time, and didn't realize it, but that he needed help . . . ." In *Miller v. State, supra*, at 740, 100 N.W.2d at 879, this court stated: "In truth the defendant himself furnished sufficient corroboration to sustain the charge. His own statements satisfied the requirement of corroboration. In Loar v. State, 76 Neb. 148, 107 N.W. 229, it was said: 'In a trial for statutory rape, admissions by the defendant showing that he planned and procured an opportunity to commit the act charged, with evidence of familiarities between them, furnishes sufficient corroboration of the girl's positive testimony to support a judgment of conviction.'" Likewise, in *Onstott v. State, supra*, the court admitted as evidence tending to corroborate the testimony of the

prosecutrix as to the offense charged, a letter written by the defendant which he had delivered to his brother. The court stated: "Her [the prosecutrix] story is further corroborated by other facts and circumstances in the record, particularly by the letter defendant wrote to his brother shortly after the offense was committed." *Id.* at 60, 54 N.W.2d at 383.

Finally, we have in evidence in this case the testimony, previously set out in some detail, that the defendant left the jurisdiction the morning after his confrontation by the wife and his admission that "he shouldn't have done those things to [the victim]." While flight, in and of itself, is frequently ambiguous, when coupled with other facts and circumstances it may be sufficient to constitute corroboration of the testimony of the prosecutrix in cases involving sexual assault. In *Salerno v. State*, 162 Neb. 99, 102, 75 N.W.2d 362, 364 (1956), the court stated: "The jury evidently believed the evidence of the prosecutrix and her corroborating witnesses, and gave consideration to the fact that defendant participated in the enterprise from its inception and sought to avoid punishment by flight into another state. The jury had a right to consider these matters." Likewise, in *State v. Gero*, 184 Neb. 107, 111, 165 N.W.2d 371, 373 (1969), this court stated: "The defendant fled from the scene of the crime and, although he claims he ran because he was shot at, it is clear that he ran and was then shot at in an attempt to halt his flight. The foregoing evidence corroborates the testimony of the prosecutrix that she was attacked and forcibly raped." See, also, *Williams v. State*, 69 Neb. 402, 95 N.W. 1014 (1903); McCormick on Evidence § 271, at 655-56 (2d ed. 1972).

Taken together, we conclude that testimony in the record with reference to the above matters was more than ample to corroborate the testimony of the prosecutrix in this case, even without a consideration of the testimony in the record with reference to the prosecutrix' subsequent complaint to her mother with regard

to the acts of the defendant made sometime thereafter.

We have held that in determining the sufficiency of the evidence corroborating the testimony of the prosecutrix, the resolution of conflicts in the evidence, the credibility of the witnesses, and the determination of the plausibility of explanations or the weighing of such evidence, are matters for the jury and must be sustained on appeal if, taking the view most favorable to the State, there is sufficient evidence to support the verdict. *State v. Tatum,* 206 Neb. 625, 294 N.W.2d 354 (1980); *State v. Pankey,* 202 Neb. 595, 276 N.W.2d 233 (1979). In this case, the evidence taken most favorably to the State supports the verdict returned in this case.

In view of what we have stated above, the verdict of the jury and the judgment entered thereon by the trial court must be affirmed.

AFFIRMED.