STATE OF NEBRASKA, APPELLEE, V. DONALD E. RUZICKA, APPELLANT.

357 N.W.2d 457

Filed November 2, 1984.   No. 84-325.

Patrick A. Brock of Cunningham, Blackburn, VonSeggern, Livingston, Francis & Riley, for appellant.

Paul L. Douglas, Attorney General, and Lynne R. Fritz, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, and SHANAHAN, JJ., and COLWELL, D.J., Retired.

CAPORALE, J.

Defendant, Donald E. Ruzicka, appeals from his conviction, following a nonjury trial, of pandering, and from the sentence of 18 months' probation with confinement in the county jail for the first 60 days and final 30 days of the probationary period. He urges that the pandering statute is unconstitutional, that the trial court erred in admitting certain evidence, that the evidence is not sufficient to support his conviction, and that his plea in abatement should have been sustained. We find no error and affirm.

Neb. Rev. Stat. § 28-802 (Reissue 1979) provides that one commits pandering if, among other things, he agrees to receive money for procuring one to commit an act of prostitution. Neb. Rev. Stat. § 28-801(1) (Reissue 1979) provides in part: "Any person who performs, offers, or agrees to perform any act of sexual penetration, as defined in subdivision (5) of section 28-318, with any person not his spouse in exchange for money

or other thing of value commits prostitution." At the relevant time, sexual penetration was defined in Neb. Rev. Stat. § 28-318(5) (Reissue 1979), now § 28-318(6) (Cum. Supp. 1984), as

> sexual intercourse in its ordinary meaning, cunnilingus, fellatio, anal intercourse, or any intrusion, however slight, of any part of the actor's body or any object manipulated by the actor into the genital or anal openings of the victim's body which can be reasonably construed as being for nonmedical or nonhealth purposes. Sexual penetration shall not require emission of semen.

Ruzicka's first constitutional attack, that the act is impermissibly vague, may be disposed of quickly. We have said:

> A penal statute creating an offense must be sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties. Any statute which forbids the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning, and differ as to its application, violates the first essential of due process of law.

*State v. Adkins*, 196 Neb. 76, 80, 241 N.W.2d 655, 658 (1976).

However, it is well established that "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy*, 417 U.S. 733, 756, 94 S. Ct. 2547, 41 L. Ed. 2d 439 (1974); *State v. Frey, ante* p. 558, 357 N.W.2d 216 (1984); *State v. Sprague,* 213 Neb. 581, 330 N.W.2d 739 (1983). As will be seen from the discussion which follows, there is no doubt that Ruzicka was engaging in conduct which § 28-802 clearly proscribes. The evidence establishes that Ruzicka agreed to receive money for procuring two women to commit acts of prostitution. Ruzicka thus cannot complain that the statute failed to provide him with notice that his acts were unlawful.

Ruzicka's second constitutional assault contends that § 28-802 violates the equal protection guarantees in that the penalties for pandering, a Class IV felony punishable by imprisonment for not more than 5 years or a fine of $10,000, or both such fine and imprisonment, Neb. Rev. Stat. § 28-105 (Reissue 1979), and for prostitution, a Class V misdemeanor

punishable by a maximum fine of $100, Neb. Rev. Stat. § 28-106 (Cum. Supp. 1984), are too disparate. Ruzicka reasons that one who engages in prostitution actually engages in a sex crime, yet is subject only to a maximum $100 fine, while one who merely facilitates the sex crime is subject to a substantially higher fine and possible imprisonment. Since, in Ruzicka's eyes, prostitution is morally more reprehensible than the act of pandering, the difference in penalties, he argues, denies equal protection rights.

A review of the legislative history demonstrates that the Legislature does not agree with Ruzicka's assessment of the relative vileness of the two crimes. That history reveals that in enacting § 28-802 the Legislature intended to curtail the business of prostitution and thereby reduce commercialized vice. Concern was also expressed during the floor debate about the well-being and safety of those who were under the control of panderers. The statute was specifically aimed at discouraging prostitution by punishing panderers, whom the Legislature considered to be a major source of the problem. Floor Debate, L.B. 38, Judiciary Committee, 85th Leg., 1st Sess. (Apr. 1, 5, 19, 1977).

It is clear that the more severe penalty for the crime of pandering is reasonably and rationally related to the legitimate governmental purposes of protecting the public and suppressing commercialized vice. This court does not sit as a superlegislature to review the wisdom of legislative acts. *Bridgeford v. U-Haul Co.*, 195 Neb. 308, 238 N.W.2d 443 (1976). Our statement in *State v. Haynes*, 192 Neb. 445, 448, 222 N.W.2d 358, 361 (1974), disposes of this second constitutional argument:

It is well established that all reasonable intendments must be indulged to support the constitutionality of legislative acts, including classifications adopted by the Legislature. If the classification of persons singled out by the legislation is reasonable and not arbitrary, and is based on substantial differences having a reasonable relation to the persons dealt with and the public purpose to be achieved, it meets the constitutional test of equal protection.

Section 28-802 does not violate the constitutional guarantee of equal protection.

In his third and final constitutional argument, Ruzicka contends that the penalty for pandering, authorized by § 28-802, is disproportionate to the severity of the crime and thereby amounts to cruel and unusual punishment, in violation of both the U.S. and state Constitutions. Again, Ruzicka relies on the disparity between the penalties for prostitution and for pandering.

The U.S. Supreme Court has explained in *Gregg v. Georgia*, 428 U.S. 153, 96 S. Ct. 2909, 49 L. Ed. 2d 859 (1976), that the eighth amendment to the U.S. Constitution prohibits punishment which is grossly disproportionate to the severity of the crime. However,

> in assessing a punishment selected by a democratically elected legislature against the constitutional measure, we presume its validity. We may not require the legislature to select the least severe penalty possible so long as the penalty selected is not cruelly inhumane or disproportionate to the crime involved. And a heavy burden rests on those who would attack the judgment of the representatives of the people.

*Id.* at 175.

We find nothing in article I, § 9, of our Constitution which imposes greater limits upon our Legislature. Indeed, we have held that the language of article I, § 9, prohibiting "cruel and unusual" punishment does not abridge the Legislature's power to select such punishment as it deems most effective in the suppression of crime. *State v. Tucker*, 183 Neb. 577, 162 N.W.2d 774 (1968).

Ruzicka has failed to meet the heavy burden imposed by *Gregg v. Georgia*. As we have seen, the Legislature chose a penalty for the crime of pandering which is reasonably and rationally related to valid governmental goals. Although the Legislature has concluded that a defendant who is convicted of prostitution should be treated more leniently than a defendant convicted of pandering, it does not follow that the punishment for pandering is thereby rendered cruel and unusual.

For an example of a situation which meets the heavy burden

imposed by *Gregg v. Georgia,* see *Solem v. Helm,* 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983), which held that a sentence of life imprisonment without the possibility of parole for uttering a $100 no-account check was grossly disproportionate to the crime committed, and thus cruel and unusual.

In essence, Ruzicka's argument is that his sentence is an excessive one. The sentence can hardly be characterized as harsh, and is well within the statutory limits set out in § 28-105. The applicable rule is that a sentence will not be set aside if it is within the statutory limits, absent an abuse of discretion by the trial court. *State v. Klappal, ante* p. 374, 355 N.W.2d 221 (1984). The record shows no abuse of discretion.

The facts were developed through a stipulated record consisting of certain police reports, to portions of which Ruzicka objected, and other documentary evidence. Ruzicka argues that the trial court erred in overruling his objections to certain statements made by two women who presented themselves to undercover investigators, as discussed later. His objections were grounded on the claims that the statements were hearsay and denied him his state and federal constitutional rights to confront the witnesses against him. He further objected on the ground that he had been unable to depose one of the women. We, however, need not address those claims, for, as will be seen from the discussion which follows, even if the statements made by the two women were improperly admitted, they were cumulative. There is sufficient evidence exclusive of those statements to sustain the conviction; if any error was made by admitting the statements, it was harmless error and not a ground for reversal. *State v. Smith, ante* p. 201, 352 N.W.2d 620 (1984); *State v. Smith,* 209 Neb. 505, 308 N.W.2d 820 (1981); *State v. Beam,* 206 Neb. 248, 292 N.W.2d 302 (1980); *Chapman v. California,* 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967), *reh'g denied* 386 U.S. 987, 87 S. Ct. 1283, 18 L. Ed. 2d 241. Moreover, in a case tried to the court without a jury, there is a presumption that the trial court, in reaching its decision, considered only evidence that is competent and relevant. In such a case this court will not overturn such a decision where there is sufficient material, competent, and

relevant evidence to sustain the judgment. *State v. Tomes, ante* p. 148, 352 N.W.2d 608 (1984).

This brings us to a review of the sufficiency of the evidence to support the conviction. The record, without reference to the statements of the two women, reveals the following.

On May 17, 1983, three men attending the annual fire school in Grand Island, Nebraska, were approached at the Ramada Inn by Ruzicka, who asked whether firemen would be able to pay $100 for a woman. Ruzicka advertised that he had plenty of girls in his "stable" who were clean, drug free, and herpes free. One of the men subsequently reported the incident to the Grand Island Police Department. The police enlisted the aid of the Nebraska State Patrol to investigate the matter.

On May 20, 1983, an investigator for the State Patrol, in an undercover capacity, met Ruzicka at a Grand Island bar. Upon inquiry, Ruzicka said that he had some girls for rent, two of whom were married and available for afternoon sessions, and another two of whom were single and available for evening sessions. During the course of the conversation, Ruzicka informed the investigator that he had only been in the business for 7 weeks and was attempting to recruit more women. However, he stated that the four women he had working for him were clean, "foxy" ladies. Ruzicka set a price range of from $70 to $150. He then gave the investigator his business card and information as to how he could be contacted.

On May 25, 1983, the investigator contacted Ruzicka on the telephone and recorded the conversation. Ruzicka stated that they could do business during the afternoon of May 26, 1983, at a Grand Island motel. He told the investigator that he could furnish two "foxy" ladies who would not give them anything to take home. Ruzicka stated that the price for a "straight lay," "half-and-half," or "blow job" was $50, but for $90 he could provide a more attractive lady.

On May 26, at a predetermined time, Ruzicka arrived at the motel rooms rented by the investigator for himself and for a second investigator. Ruzicka showed the investigators photographs of three women, one of whom he indicated was available for that afternoon. Ruzicka stated that Dee Dee was available for $90, which included anything except anal

intercourse and rough stuff. Ruzicka further stated that Ann, of whom he had no photograph, was also available for $70. After the investigators made their selections, Ruzicka consulted a book and called the two women on the telephone, telling them to go to the room of one of the investigators. He then told the investigators that he would call later to make arrangements to meet that evening, when payment would be made. Ruzicka then left the room.

About 10 minutes later Dee Dee and Ann arrived at the first investigator's room. One of the investigators and Ann then went to a separate room. The first investigator gave Dee Dee $90, and she began disrobing, following which she was arrested. Ann was given $70 and had completely disrobed before she was arrested. Ruzicka was arrested shortly thereafter.

It is well established in this jurisdiction that a verdict of guilty will not be overturned on appeal unless it is so lacking in probative force that it can be said as a matter of law that the evidence is insufficient to support it. *State v. Lamb*, 213 Neb. 498, 330 N.W.2d 462 (1983). See, also, *State v. Christiansen*, 217 Neb. 740, 351 N.W.2d 67 (1984). This is not such a case.

The foregoing record establishes beyond doubt that Ruzicka was engaged in the business of soliciting men to pay for the sexual services of women in his "stable." In the process of the undercover operation which ultimately led to his arrest, Ruzicka agreed to procure two women for the purpose of engaging in sexual activity with the investigators for a price. Ruzicka did in fact procure two women for the two investigators, and he arranged for payment after the acts were to have been completed. The women proceeded to assigned motel rooms, accepted money, and removed their clothing. Under these circumstances one would have to be more than ordinarily ignorant and naive to conclude that the two women were where they were at the behest of Ruzicka for any purpose other than to engage in prostitution as defined in §§ 28-801 and 28-318(5).

Ruzicka's argument that there is no evidence to show that he agreed to receive money is equally without merit. Direct evidence of an agreement to receive money was presented,

showing that Ruzicka told the investigators he would make arrangements to meet them later to secure payment for his services in procuring the two women. Although the fee set by Ruzicka was actually paid to the women, the evidence overwhelmingly indicates that Ruzicka expected to be paid for his efforts.

Finally, Ruzicka claims the trial court should have sustained his plea in abatement, which addressed two issues, the sufficiency of the evidence at the preliminary hearing and a claim that he was denied an opportunity to present evidence at the preliminary hearing.

The standard of proof at a preliminary hearing requires only that the evidence establish that a crime has been committed and that there is probable cause to believe that the accused committed it. *Kruger v. Brainard*, 183 Neb. 455, 161 N.W.2d 520 (1968). The evidence introduced at the preliminary hearing virtually duplicates the material evidence adduced at the trial in the district court. As we have seen, that evidence is sufficient to support the finding of guilt and therefore necessarily ample to justify binding Ruzicka over to the district court. *State v. Tomrdle*, 214 Neb. 580, 335 N.W.2d 279 (1983); *State v. Franklin*, 194 Neb. 630, 234 N.W.2d 610 (1975).

AFFIRMED.