STATE OF NEBRASKA, APPELLEE, V. WILLIAM R. THIERSTEIN, APPELLANT.

371 N.W.2d 746

Filed August 16, 1985. No. 84-751.

Richard L. Schmeling, for appellant.

A. Eugene Crump, Deputy Attorney General, and Harold Mosher, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

GRANT, J.

William R. Thierstein appeals from an order of the district court for Lancaster County, which affirmed his conviction in the county court for engaging in the unauthorized practice of law. Thierstein was convicted after trial to the county court and was fined $250. We affirm the decision of the district court.

Thierstein had been an attorney admitted to practice in the State of Nebraska, but had been indefinitely suspended from the practice on January 19, 1982, and remained suspended at the time of trial.

In October of 1983, Constance Miller contacted Thierstein concerning the adoption by her husband of her son by a previous marriage. Thierstein had done some work for Mrs. Miller previously, and she was unaware that he had been suspended. She testified that he never did inform her of that fact. Thierstein quoted Mrs. Miller a price of $150 to $200 to draw up the necessary documents and to represent the Millers in the action.

Later that month, Thierstein delivered to the Millers a "Relinquishment of Minor Child by Parent and Consent to Adoption," with instructions to have the document signed by the child's natural father. The Millers obtained the father's signature, and Thierstein returned to the Miller home to pick up the document.

Thierstein again went to the Miller home, in January of 1984, and left an adoption "Petition" with them for their signatures. On February 5, 1984, Mr. Miller returned the executed petition to Thierstein at his home. Thierstein advised Mrs. Miller that he would submit the documents to the court and inform the Millers of the date for their court appearance. When Thierstein failed to call, Mrs. Miller called the Lancaster County Court to inquire whether the papers had been filed. She was referred to Dennis Carlson of the Nebraska State Bar Association, who in turn contacted the Lincoln Police Department.

At the request of the police, Mrs. Miller telephoned Thierstein on February 22, 1984, to inquire about the adoption. The phone call was recorded by the police. Thierstein told Mrs. Miller that the papers had been filed and that the judge would call her with a court date. Mrs. Miller then arranged a meeting with Thierstein to get copies of the documents and to discuss the adoption.

On February 27, 1984, Thierstein went to the Miller home and delivered copies of the documents to the Millers. During a 30-minute conversation with the Millers, Thierstein admitted to having drafted the documents. Before Thierstein left he accepted $50 in cash from the Millers and signed and gave Mrs. Miller a receipt for "Legal fee for Adoption."

Prior to Thierstein's arrival at the Miller home on this occasion, the police had installed a transmitter in the living room of the home. Two detectives sat in a car outside and recorded about 10 minutes of the conversation. They were unable to record the rest due to a malfunctioning of the recorder, but the two detectives listened to the remainder of the conversation. The police also photocopied the $50 to be given to Thierstein. After Thierstein left the Miller home, he was stopped by the detectives and arrested. The $50 was found in his pocket and compared with the photocopy. The bills matched the copy.

Thierstein thereafter cooperated with police and consented to a search of his home. He showed officers where to find the originals of the documents, which were located on top of a file cabinet in the basement of his home.

Before his suspension as an attorney, Thierstein had been subleasing space he had in an office building to three other attorneys. One of these attorneys was Terry Cannon. After his suspension Thierstein kept the space and conducted the family's business out of the office. When the lease expired, Thierstein moved his office to the basement of his home. Cannon practiced law out of his own home, but used Thierstein's office and typist on occasion. Thierstein testified that he referred several cases to Cannon after his suspension. He also testified that typing done for Cannon was left on top of the file cabinet on which the originals had been found.

Cannon testified that he did receive referrals from Thierstein and that he did discuss adoptions in general with him. However, Cannon also testified that the name Constance Miller was unfamiliar to him, that he did not draft the documents, that he had never seen the documents, and that he had never handled an adoption except one which he was working on at the time of trial.

Thierstein first assigns as error the trial court's finding that he had violated Neb. Rev. Stat. § 7-101 (Reissue 1983). That section states, in pertinent part, that

> no person shall practice as an attorney or counselor at law, or commence, conduct or defend any action or proceeding to which he is not a party, either by using or subscribing his own name, or the name of any other person, or by drawing pleadings or other papers to be signed and filed by a party, in any court of record of this state, unless he has been previously admitted to the bar by order of the Supreme Court of this state.

Thierstein suggests that this statute requires both drafting of the pleading and filing of the pleading in a court of record. He argues that because of his arrest he could not have filed the pleading, and the crime was not completed. This argument is tenuous, as it ignores the plain import of the statute. The language of the statute, "to be signed and filed," does not require the actual filing of the pleading but, rather, goes to the purpose of the document and to the intent of the person preparing the document. The statute requires only that a pleading be drafted with the intent that it will be filed in court, and does not require actual filing. The county court found "Defendant Thierstein's intended use of these pleadings is obvious from everything he told the Millers."

Thierstein's second assignment of error is that the trial court failed to find that Thierstein was acting in the capacity of a paralegal. The assignment is without merit. Thierstein's witness, an instructor at the Lincoln School of Commerce and director of its paralegal program, testified that a paralegal would not have a client sign a document until after an attorney approved the document. She testified that a paralegal works under the supervision of an attorney and that the paralegal's work must lose its identity as work of the paralegal and become

the work product of the attorney.

In the instant case there was no supervision, direction, or approval of Thierstein's work by an attorney. Thierstein contends he was acting in the capacity of paralegal for Cannon. Cannon testified that he had never seen the documents, had never directed Thierstein to draft them, and had never met the Millers. The documents never became the work product of an attorney. Thierstein could not have been acting as a paralegal.

Thierstein next assigns as error the trial court's decision to admit as evidence the cassette recording of the conversation which took place in the Miller home on February 27, 1984. We need not address this claim because this error, if it was error at all, did not constitute reversible error. Improper admission of evidence constitutes nonreversible harmless error where the evidence is cumulative and there is other competent evidence to support the conviction. *State v. Ruzicka*, 218 Neb. 594, 357 N.W.2d 457 (1984). "Moreover, in a case tried to the court without a jury, there is a presumption that the trial court, in reaching its decision, considered only evidence that is competent and relevant." *Id*. at 599, 357 N.W.2d at 462.

The content of the conversation was testified to by the Millers, who participated in it. The tape which contained a portion of the conversation was cumulative and merely corroborated the testimony of the Millers. Both Mr. and Mrs. Miller testified that Thierstein told them that Thierstein had drawn up the pleading. There was sufficient evidence to sustain the finding of the trial court.

Thierstein's final assignment of error is that the trial court erred in not finding § 7-101 unconstitutionally vague as applied to him. We disagree with Thierstein. The statute prohibits the "drawing [of] pleadings or other papers to be signed and filed by a party, in any court of record of this state." Thierstein drafted pleadings, had them signed by the parties, and told the parties he would file the pleadings with the county court. His conduct was clearly proscribed by § 7-101. He cannot seriously argue that he did not know his actions were in violation of that section.

The order of the district court is affirmed in all respects.

AFFIRMED.