STATE OF NEBRASKA, APPELLEE, V. GEORGE RAYMOND DANIELS,
APPELLANT.

388 N.W.2d 446

Filed May 30, 1986.     Nos. 85-463, 85-464, 85-465, 85-466.

Kurt A. Hohenstein, for appellant.

Robert M. Spire, Attorney General, and Lynne R. Fritz, for appellee.

KRIVOSHA, C.J., BOSLAUGH, WHITE, HASTINGS, CAPORALE, SHANAHAN, and GRANT, JJ.

HASTINGS, J.

George R. Daniels appealed his conviction by jury on two counts of first degree sexual assault and two counts of first degree false imprisonment. Daniels was originally charged with

two counts of first degree sexual assault and two counts of kidnaping. At trial appellant's motions for directed verdicts after each of the State's and the appellant's cases were overruled.

In reaching its verdict the jury found that the appellant was not guilty of kidnaping but was guilty of two counts of first degree false imprisonment as a lesser-included offense. Appellant's motions for new trial on each of the unconsolidated cases were overruled. Daniels was sentenced to 10 to 20 years' imprisonment for each of the sexual assault convictions and 1 to 3 years for each of the false imprisonment convictions, all sentences to run consecutively.

The incident from which these convictions arose took place in a house rented by the Wilke family in South Sioux City. The family consists of a husband and wife and five children. Daniels paid the Wilkes $116-per-month rent for living space in their home. He slept in the basement but had free access to the entire house. The Wilkes also had access to the basement, where they did laundry and stored goods, though Mr. Wilke instructed the children to respect the appellant's privacy.

On July 6, 1984, while the Wilkes were on vacation, two neighborhood girls, ages 9 and 12, came to the door, asking for Kathleen Wilke's daughters. The appellant invited them to watch T.V., locked the doors, threatened them with a machete, and sexually assaulted them. Daniels also threatened the girls with physical harm if they reported the incident to anyone.

The day after the assault, one of the victims, Allison, met her friend Johnna Eidenschink at the park and sketchily related the incident. Johnna told her mother, Kathleen Wilke, about the conversation, and Duane Wilke ordered the appellant to leave the house permanently on September 9. Daniels left the Wilke house, taking nothing but his cigarettes with him. On September 21 the Wilkes consented to a search of the basement, which yielded the machete Daniels used in assaulting the girls.

The appellant assigns as errors that the trial court erred (1) in overruling the motion to suppress the machete, finding that the Wilkes had authority to consent to a search of the basement, (2) in overruling hearsay objections to the testimony of Allison and Johnna regarding their conversation about the assault, and (3)

in overruling appellant's motions for directed verdicts on the kidnaping charges.

Regarding the first assignment of error, the motion to suppress the machete was properly overruled. We have stated that a warrantless search of a house may be justified when the police have obtained the consent to search from a party who possessed common authority over, or other sufficient relationship to, the premises sought to be inspected. *State v. Van Ackeren*, 200 Neb. 812, 265 N.W.2d 675 (1978). The Wilkes had sufficient authority over the basement to consent voluntarily to its search.

The parties devote a substantial portion of their briefs to arguments concerning whether the appellant had been evicted and whether the appellant's possessions had been abandoned. We need not reach those questions. Even if Daniels had not vacated the house, the Wilkes, as cohabitants of the house, had authority to consent to a search of the basement. The basement was not designated for exclusive use of the appellant, and, in fact, it was not used exclusively by the appellant. See, also, *State v. Billups*, 209 Neb. 737, 311 N.W.2d 512 (1981); *State v. Schrader*, 196 Neb. 632, 244 N.W.2d 498 (1976); *United States v. Finch*, 557 F.2d 1234 (8th Cir. 1977).

The appellant's second assignment of error concerns the admission of testimony of one of the victims, Allison, and her friend Johnna Eidenschink, Kathleen Wilke's daughter. Allison testified that she had a conversation with Johnna in the park on the day after the assault took place. The court overruled the defendant's hearsay objection. "Q. What did you tell Johnna? A. I told her that—I told her what happened. I didn't tell her all the things he made us do. I just told her what he did to us."

Johnna, age 12, testified that about "half a week" after her return to South Sioux City, she talked with Allison in a park. Again over objection, the witness testified:

Q. I'm going to ask you the question again. Then you tell me either yes or no. When you were talking to Allison after you had gotten back from vacation, did she say anything to you that concerned you? Answer that yes or no.

A. Well, yes.

Q. What was it that she told you that concerned you?

A. She said that George Daniels was chasing them around with a knife.

Q. Did she say if it involved anyone else besides herself or not?

A. She said her and Kelly . . . .

Q. Did she say anything else that you can remember?

A. No.

In support of the admission of this testimony, the State relies on an evidentiary rule developed in Nebraska case law.

"The rule is well established in this state that in a prosecution for sexual assault, *the prosecutrix may testify* in chief on direct examination, if within a reasonable time under all the circumstances after the act was committed she made complaint to another, *to the fact and nature of the complaint, but not as to its details;* and that *others may likewise testify in chief to such fact and nature of the complaint, but not as to its details. . . ."*

(Emphasis in original.) *State v. Evans*, 212 Neb. 476, 481, 323 N.W.2d 106, 109 (1982); *State v. Watkins*, 207 Neb. 859, 301 N.W.2d 338 (1981); *State v. Chaney*, 184 Neb. 734, 171 N.W.2d 787 (1969); *Perry v. State*, 163 Neb. 628, 80 N.W.2d 699 (1957); *Sherrick v. State*, 157 Neb. 623, 61 N.W.2d 358 (1953).

This court has also stated that one to whom the complaining witness has complained may testify to the fact and nature of the complaint if the complaint was made voluntarily and without unreasonable or inconsistent delay. *State v. Watkins, supra*; *State v. Deardurff*, 186 Neb. 92, 180 N.W.2d 890 (1970); *Texter v. State*, 170 Neb. 426, 102 N.W.2d 655 (1960).

The "complaint of rape" rule is a longstanding doctrine which is applicable under three different theories with varying results. The rationale underlying the above-quoted Nebraska rule is explained as the first theory in 4 J. Wigmore, Evidence in Trials at Common Law § 1135 at 298-99 (J. Chadbourn rev. 1972):

Now, when a woman charges a man with a rape, and testifies to the details, and the accused denies the act itself, its very commission thus coming into issue, the circumstance that at the time of the alleged rape the

woman said nothing about it to anybody constitutes in effect a self-contradiction . . . .

. . . .

    (b) So, where nothing appears on the trial as to the making of such a complaint, the jury might naturally assume that none was made, and counsel for the accused might be entitled to argue upon that assumption. As a peculiarity, therefore, of this kind of evidence, it is only just that the prosecution should be allowed to forestall this natural assumption by showing that the woman was *not silent*, i.e., *that a complaint was in fact made*.

(Emphasis in original.) As a consequence of applying this theory, the witness may not testify to details of the complaint, and the prosecutrix must testify at trial. *Id.* § 1136.

Since the appellant denied the charges against him, and Allison testified at trial, the Nebraska "complaint of rape" rule is applicable in this case.

The appellant argues, however, that despite the "complaint of rape" rule, Allison's and Johnna's testimony was nevertheless hearsay and does not fall within any of the statutory exceptions. It is true that under the first theory of the "complaint of rape" rule, there is no exception to the hearsay rule. Contrast theory three for res gestae and excited utterances. *Id.* § 1139.

In practical application it is very difficult to lay proper foundation for and elicit testimony of the complaint without appearing to violate the hearsay rule. While foundation is laid in part by describing the context of the complaint—time, place, and conversants—the conversation is not clearly relevant until the complainant explains the topic of the conversation. Nor is the evidentiary rule referred to above invoked without some mention of the fact that the conversation concerned a complaint of sexual assault. The most natural form of describing such a conversation appears to be textbook hearsay: She told me he sexually assaulted her.

As defined in Neb. Rev. Stat. § 27-801(3) (Reissue 1979), hearsay "is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

If the victim of a sexual assault or the person to whom he or she complains testifies to the topic of their conversation, the general statement of the complaint is not necessarily offered for the truth of the matter asserted. It is offered to demonstrate the relevancy of the conversation. When offered for this limited purpose, the statement is not hearsay within the statutory definition. By the same token it is not admissible for substance. Accordingly, the jury should be given a limiting instruction when such testimony is received. *Fitzgerald v. United States*, 443 A.2d 1295 (D.C. 1982).

*Fitzgerald* is a notable case not only for similarity of the facts involved but for the fact that the District of Columbia, along with Nebraska, is one of the few jurisdictions that requires corroboration of sexual assaults on minors. Annot., 31 A.L.R.4th 120 (1984). In that case a 12-year-old girl was sexually assaulted but did not immediately report the crime due to a threat on her life. The following day, however, at a picnic, she complained to her young friend, describing some but not all of the details. The court held that evidence of the conversation and complaint was admissible as corroboration under the "complaint of rape" doctrine, "not for the truth of the matter asserted, but merely for the fact that the statement was made." 443 A.2d at 1304. The court remanded with instructions to carefully limit testimony regarding the complaint to the mere fact that a complaint was made. At the first trial the court had admitted a substantive, detailed description of the occurrence as related by the complainant to the witnesses.

Allison's testimony in the present case does not relate details of the crime, and thus complies with the restrictions on the "complaint of rape" doctrine. It was not error for the trial court to admit her statement that she complained of a sexual assault.

Defendant argues that Johnna's testimony that Allison told her that "George Daniels was chasing them around with a knife" related more details than were absolutely necessary to identify the conversation as a complaint of sexual assault. However, if a witness can testify that the victim told the witness that "she was raped," or "she was sexually assaulted," or "she was forced to have intercourse," as pertaining to "the fact and nature of the complaint," we see nothing wrong with her

saying, in effect, "she submitted to intercourse because of the threat of a knife."

This underlines our determination that Johnna's testimony was relevant, not for the truth of the matter asserted but to confirm Allison's testimony that she made a complaint to Johnna. It was not admissible as substantive proof that Daniels chased the victim with a knife. In that regard the situation is much the same as the admissibility of a prior inconsistent statement which is received only as an aid to the jury in estimating the credibility of the witness, and not as substantive proof of the facts declared. The trial court correctly limited the jury's consideration of such statements by its instruction No. 14. Although we have never previously addressed this situation, we believe that the trial court should have given a limiting instruction as to the "complaint of rape" statement.

However, the trial court's failure to give such an instruction was not prejudicial error under the circumstances. The fact that the appellant chased the victim with a knife is not an essential element of the crimes charged. And, although that testimony might have served to prove the appellant's intent to terrorize as an element of the kidnaping charge, or terrorizing as an element of first degree false imprisonment, both victims testified to the appellant's threatening use of or reference to the knife.

Thus, Johnna's statement, used erroneously as substantive proof, was merely cumulative. There is other competent evidence to support the convictions. The trial court's failure to give a limiting instruction was not reversible error in this instance. *State v. Smith*, 221 Neb. 406, 377 N.W.2d 527 (1985); *State v. Thierstein*, 220 Neb. 766, 371 N.W.2d 746 (1985); *State v. Ruzicka*, 218 Neb. 594, 357 N.W.2d 457 (1984).

The appellant's third assignment of error, that the trial court should have granted his motion for directed verdict of not guilty, is also without merit. Daniels argues that the State did not present sufficient evidence to support the kidnaping charge. The crime of kidnaping is defined at Neb. Rev. Stat. § 28-313 (Reissue 1979):

(1) A person commits kidnapping if he abducts another or, having abducted another, continues to restrain him with intent to do the following:

(a) Hold him for ransom or reward; or

(b) Use him as a shield or hostage; or

(c) Terrorize him or a third person; or

(d) Commit a felony; or

(e) Interfere with the performance of any government or political function.

Defining the more pertinent terms from § 28-313, Neb. Rev. Stat. § 28-312 (Reissue 1979) provides:

(1) Restrain shall mean to restrict a person's movement in such a manner as to interfere substantially with his liberty:

(a) By means of force, threat, or deception; or

. . . .

(2) Abduct shall mean to restrain a person with intent to prevent his liberation by:

(a) Secreting or holding him in a place where he is not likely to be found; or

(b) Endangering or threatening to endanger the safety of any human being.

We believe that the evidence that Daniels locked the doors of the Wilke house, made references to and wielded the machete, and, finally, restrained the victims physically and sexually assaulted them against their struggles to resist is sufficient evidence of abducting, restraining, terrorizing, and committing a felony to submit the charge of kidnaping to a jury.

The trial court is justified in directing a verdict of not guilty only when there is a total failure of competent proof to support a material allegation in the information, or when testimony adduced is of so weak or doubtful a character that conviction based thereon could not be sustained. *State v. Smith*, 219 Neb. 176, 361 N.W.2d 532 (1985). Such was not the case here, and the district court did not err in refusing to do so.

The judgment is affirmed.

AFFIRMED.

SHANAHAN, J., concurring.

Because there is ample appropriate evidence and no prejudicial error, I concur with the majority, namely, Daniels' convictions must be affirmed. However, in affirming Daniels' convictions for first degree sexual assault, this court continues

to adhere to a suspect evidentiary requirement, an anachronistic remnant of an era which lacked the procedural protection and safeguards now available to an accused in the adversarial process of our criminal justice system.

In reaching its decision the majority has again recognized the "complaint of rape" rule, which is nothing more than a form of required corroboration of a victim's testimony before a conviction for first degree sexual assault may be sustained.

Required corroboration of a victim's testimony was unknown at common law in prosecution of a charge for the crime now known as sexual assault. See 7 J. Wigmore, Evidence in Trials at Common Law § 2061 (J. Chadbourn rev. 1978).

Much of the problem resulting from the requirement of corroboration in a sexual assault case is laid at the feet of Sir Matthew Hale, Lord Chief Justice of the Court of King's Bench from 1671 to 1676, whose writings were posthumously published in 1736. According to Hale, in a rape case there should be "concurrent evidence to make out the fact," because sexual assault "is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused, tho never so innocent." See *People v. Rincon-Pineda*, 14 Cal. 3d 864, 874, 538 P.2d 247, 254, 123 Cal. Rptr. 119, 126 (1975). This court in *Mathews v. State*, 19 Neb. 330, 27 N.W. 234 (1886), adopted Hale's rule, casting suspicion over testimony from any victim in a sexual assault trial, and acknowledged that Hale, 200 years earlier, had laid "down rules for testing the credibility of the principal witnesses, which are as applicable to-day in trials [for sexual assault] as when announced." *Id*. at 335, 27 N.W. at 236.

In historical perspective, Hale's rule was formulated when
> "[t]he fundamental precepts of due process, that an accused is presumed innocent and is to be acquitted unless proven guilty beyond a reasonable doubt . . . were recognized as desiderata in Hale's era but had yet to crystallize into rights. . . . The rights of an accused to present witnesses in his defense and to compel their attendance, subsequently enshrined in the Sixth Amendment, were barely nascent in the 17th century. . . . Most importantly of all, in the context of a rape case, one

accused of a felony in Hale's day had no right whatsoever to the assistance of counsel . . . ." *People v. Rincon-Pineda, supra* at 878, 538 P.2d at 256-57, 123 Cal. Rptr. at 128-29. In Hale's era, therefore, trial on a sexual assault would force "an accused, on trial for his life, to stand alone before a jury inflamed by passion and to attempt to answer a carefully contrived story without benefit of counsel, witnesses, or even a presumption of innocence." *Id.* at 878, 538 P.2d at 257, 123 Cal. Rptr. at 129.

"The arguments most often heard in support of the rule of corroboration involve many factors, such as the jury's outrage at testimony of sex offenses, the difficulty in defending against such charges, the dangers of falsification, and the severe penalties involved." *State v. Cabral*, 122 R.I. 623, 626, 410 A.2d 438, 440 (1980).

Notwithstanding Hale's skepticism concerning testimony from a victim in a sexual assault case, jurisdiction after jurisdiction has renounced any court-made rule requiring corroboration of a victim's testimony in a sexual assault trial before a conviction for that crime may be sustained. For instance, in *State v. Byers*, 102 Idaho 159, 627 P.2d 788 (1981), the Supreme Court of Idaho, noting that only two states, Idaho and Nebraska, categorically required corroboration in "sex crime cases," abolished Idaho's court-made rule of corroboration for a victim's testimony, thereby leaving Nebraska the somewhat dubious distinction of being the only jurisdiction still holding that "corroboration of the victim's testimony is necessary in order to support a conviction" in every case of sexual assault. Annot., 31 A.L.R.4th 120, 136 (1984). As mentioned in the majority's opinion, *Fitzgerald v. United States*, 443 A.2d 1295 (D.C. 1982), restricted the requirement of corroboration to a case involving a sexual assault on a child versus a case involving a mature victim, but even that suggested distinction has inherent incongruities.

The requirement for independent corroboration in sex-offense cases has been the subject of ever increasing criticism. Contemporary empirical studies suggest that the factors employed to support the corroboration requirement do not justify the rule. There is a great

reluctance to report a rape. [Citations omitted.] Juries generally tend to view rape charges with skepticism and suspicion, especially when there is a suggestion of willingness or agreement on the part of the victim [citations omitted], and convictions, in the absence of aggravating circumstances, are the exception rather than the rule.

*State v. Cabral, supra* at 627, 410 A.2d at 441.

After observing that testimony from a sexual assault victim would have been sufficient without corroboration to support a conviction for the crime of simple battery, the Idaho Supreme Court, in *State v. Byers, supra* at 164, 627 P.2d at 793, commented:

[W]e agree that an absolute rule in all sex crime cases requiring corroboration both as to the fact of the crime and the perpetrator thereof is no longer justified. . . . It is difficult to see a sound basis for continuing the philosophy that rape is distinctive from other crimes to the extent that corroboration is a necessary requirement.

The trier of fact in a sexual assault case will consider several relevant factors or circumstances in determining credibility of any witness, including the victim; for example, the demeanor of a witness, the apparent fairness exhibited by a witness, and the reasonableness or unreasonableness of statements of a witness. See NJI 1.41. By instruction in a jury trial and argument of counsel, the trier of fact may also consider existence or absence of any prompt report of a sexual assault as an additional factor affecting credibility of a victim or weight to be accorded a victim's testimony. Further, the trier of fact may consider whether the victim had a motive to falsify the particular charge against a defendant and whether there is any inconsistency within the victim's testimony or resulting from the testimony of another witness.

Abolishing the corroboration requirement would not jeopardize the rights of an accused. Frequently, the State produces evidence in addition to a victim's testimony. However, in a case where the only evidence about a sexual assault is the victim's testimony, a court must still determine whether the victim's testimony is discredited as a matter of law, that is,

decide whether a victim's testimony is so inherently self-contradictory to the point of untrustworthiness or otherwise unbelievable that a sexual assault case cannot be submitted to a jury for disposition. See *State v. Beck,* 286 S.E.2d 234, 242 (W. Va. 1981) (uncorroborated testimony of a sexual assault victim is sufficient, unless such testimony is "inherently incredible").

The rule of required corroboration of a victim's testimony in a sexual assault case entered Nebraska's criminal justice system before adoption of the Nebraska Evidence Rules in 1975. Under Neb. Evid. R. 104 (Neb. Rev. Stat. § 27-104 (Reissue 1985)), whether a person is qualified to be a witness is a preliminary question to be determined by the trial court. Further, as provided in Neb. Evid. R. 601 (Neb. Rev. Stat. § 27-601 (Reissue 1985)), "Every person is competent to be a witness except as otherwise provided in these rules." None of the Nebraska Evidence Rules refers specifically to competency or credibility of a sexual assault victim. In *State v. Joy,* 220 Neb. 535, 371 N.W.2d 113 (1985), we recognized that a defendant's conviction for first degree murder "may be supported by the uncorroborated testimony of an accomplice." *Id.* at 537, 371 N.W.2d at 115. Yet, the corroboration requirement in sexual assault cases is judicial predetermination concerning credibility of a class of witnesses, that is, a victim of a sexual assault is not entitled to the same credibility accorded a victim testifying about a crime other than a sexual assault. If, as some surmise, corroboration is required for a defendant's protection in a trial on a sexual assault charge, logically one must ponder and inevitably conclude that corroboration of a victim's testimony is indispensable to sustain a conviction on any criminal charge.

Finally, present law in Nebraska prohibits a trial judge from commenting on the evidence submitted to a jury. See NJI 1.01. Thus, a trial court cannot comment or express its view on the credibility of a witness or weight to be given to any particular evidence. Nevertheless, implicit in the requirement of corroboration is judicial depreciation of the testimony from a victim of a sexual assault.

I believe the outdated and discriminatory rule of required

corroboration of a victim's testimony regarding a sexual assault should be eliminated from the Nebraska criminal justice system.

KRIVOSHA, C.J., and WHITE, J., join in this concurrence.