STATE OF NEBRASKA, APPELLEE, V.
LEO LOUIS WOUNDED ARROW, APPELLANT.

300 N.W.2d 19

Filed December 19, 1980.    No. 43183.

Affirmed.

Richard L. Schmeling for appellant.

Paul L. Douglas, Attorney General, Mel Kammerlohr, and Brian C. Bennett for appellee.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, WHITE, and HASTINGS, JJ., and BURKHARD, District Judge.

BURKHARD, District Judge.

The defendant was charged with the offense of first degree sexual assault. After jury trial in the District Court for Lancaster County, Nebraska, defendant was found guilty of the charge and sentenced to an indeterminate term of not less than 5 years and not more than 9 years in the Nebraska Penal and Correctional Complex. Defendant has appealed to this court.

The relevant facts are that defendant and the victim were incarcerated in the County-City Jail in Lincoln, Nebraska, during the occurrence of all events giving rise to the trial of this case. They had first met in the summer of 1978, and met again about January 19, 1979, in the jail. At some point in time after the victim and Wounded Arrow started staying together in the same cell, two other inmates were placed in the same cell with

them. Both were present when the events complained of occurred.

The victim testified that, early on the morning of January 28, 1979, he was awakened by the defendant and forced by threats of murder to have sexual intercourse with him. The defendant admitted that he and the victim had sexual intercourse on that night but contended that the acts were consensual and were instigated by the victim. Both also testified that another jail inmate passed by in the hall shortly after the sexual acts occurred and talked to the victim. The victim did not report the incident until more than a day later, at which time he told his mother, the jail administrator, and a Lincoln Police Department detective.

Defendant assigns as error that (1) The jury panel was not a jury of defendant's peers and was not a representative cross-section of the citizens of Lancaster County, Nebraska; (2) A mistrial should have been ordered by the trial court because of alleged improper and prejudicial statements and arguments made by the attorneys for the prosecution during both opening statement and closing argument; (3) There was lack of corroboration of the testimony of the victim; (4) The trial court failed to instruct the jury regarding the effect of impeachment testimony; and (5) Instruction No. 9 as regards corroboration was improper because it permitted the jury to find the defendant guilty if there was corroboration as to the occurrence of the "particular act," the sexual intrusion, *or* as to the "principal fact in issue," which in this case was the use of force by the defendant. We affirm.

In support of his first assignment, defendant argues that the Nebraska jury selection system is unconstitutional because (1) Jury panels drawn from lists of registered voters are not representative of the community at large because of the relatively lower rate of voter registration among some minorities, certain age groups, the poor, and the lesser educated, and (2) Nebraska's jury exemption statute, Neb. Rev. Stat.

§ 25-1601 (Reissue 1975) exempted upon request those persons engaged in certain occupations. (The amendment removing those exemptions, codified as Neb. Rev. Stat. § 25-1601 (Reissue 1979), did not take effect until after this jury was selected.)

Nebraska's jury selection system has been held to be constitutional upon several occasions. This court held in *State v. Wright*, 196 Neb. 377, 379, 243 N.W. 2d 66, 67 (1972), as follows: "For all practical purposes, defendant's arguments constitute an evidentially unsupported attack on the Nebraska system of selecting jurors by the use of voter registration lists. This court has already held that the Nebraska system of selecting jurors by the use of voter registration lists is constitutionally permissible."

It has been established that a state may grant exemption to certain occupations: "The States are free to grant exemptions from jury service to individuals in case of special hardship or incapacity and to those engaged in particular occupations the uninterrupted performance of which is critical to the community's welfare. *Rawlins v. Georgia*, 201 U.S. 638 (1906). It would not appear that such exemptions would pose substantial threats that the remaining pool of jurors would not be representative of the community." *Taylor v. Louisiana*, 419 U.S. 522, 534, 95 S. Ct. 692, 42 L.Ed. 2d 690 (1974).

The trial court did not err in refusing to sustain defendant's motion to quash the jury panel.

Defendant objects to the following portion of the prosecution's opening statement on the ground that the prosecutor expressed his personal belief or opinion as to the guilt of the defendant: "At the close of the case, the State of Nebraska expects that you will receive instructions from this Court concerning the essential elements that are necessary to find the defendant guilty of the offense charged. The state expects that the testimony of the various witnesses that we will call — and as I've said earlier, we expect to call seven wit-

nesses. We expect that those witnesses' testimony, in conjunction with the exhibits which we will offer into evidence, coupled with the instructions that you will receive at the conclusion of the case, will prove that every essential element of the crime being prosecuted was committed by this defendant.

"The state accepts and is prepared to meet in this case its burden of proving a case beyond a reasonable doubt, and that is why this case is being tried at this time. The state expects that the evidence will show the defendant did forcibly sexually assault [the victim] on the day in question."

It should be noted that prior to the above-quoted remarks of the prosecution, the court and the prosecutor had made the following introductory comments to the jury:

"THE COURT: The next phase of the trial are opening statements by both counsel. They are not evidence or statements made by counsel at this point is not evidence or at any point. They are simply to give you an idea of what each side expects to prove in the case." Alan G. Stoler, the deputy county attorney who made the opening statement for the State, said: "As the judge has just said to you, what I say in this opening statement and what the defense attorney also says is not to be considered by you as evidence. *Everything that we say in the opening statement is what we as the State of Nebraska expect to prove, what we expect the evidence will show you during the trial in this matter.*" (Emphasis supplied.)

The gist of the prosecutor's opening statement was that the prosecutor expected the evidence to show that the defendant was guilty beyond a reasonable doubt of the crime charged. It was not an expression of a personal belief or opinion as to the guilt of the defendant.

Before it is necessary to grant a mistrial due to prosecutorial misconduct, the defendant must show that a "substantial miscarriage of justice has actually occurred." Neb. Rev. Stat. § 29-2308 (Reissue 1979); *State v. Van Ackeren*, 194 Neb. 650, 659, 235 N.W.2d 210,

216 (1975). Limiting the scope of a prosecutor's opening statement is largely within the trial court's discretion; its rulings will not be disturbed unless a prejudicial abuse of discretion occurred. 23A C.J.S. *Criminal Law* § 1085 at 99 (1961); 24A C.J.S. *Criminal Law* § 1873 (1962).

During closing arguments, the prosecutor made several remarks which were successfully objected to by defendant's counsel. At the close of the prosecution's arguments, defendant asked for a mistrial. Defendant then withdrew his motion for a mistrial in exchange for an appropriate precautionary instruction.

The defendant may not now complain of misconduct of counsel when, with knowledge of such alleged misconduct, he did not ask for a mistrial, but consented to take the chance of a favorable verdict. *Davis v. State*, 171 Neb. 333, 342, 106 N.W.2d 490, 497 (1960), citing *Johnson v. Nathan*, 161 Neb. 399, 73 N.W.2d 398 (1955). There is no showing that the court abused its discretion in failing to order a mistrial on its own motion with respect to the closing statements made by the prosecution.

Defendant's next complaint pertains to lack of corroboration, specifically as regards the use of force, or threat of force, express or implied. Conversely, defendant contends the sexual acts occurred with the victim's consent. Defendant correctly states that the victim's testimony need not be independently corroborated on the particular acts constituting the sexual assault, but must be corroborated on the material facts and circumstances tending to support the victim's testimony about the principal fact in issue. *State v. Tatum*, 206 Neb. 625, 294 N.W.2d 354 (1980).

The law was also correctly stated in the court's instructions to the jury. Instruction No. 9 was as follows: "There must be testimony on behalf of the state corroborating the testimony of [the victim] to justify a conviction. Such corroboration may consist of testimony of another witness or witnesses to the particular act consti-

tuting the offense or by material facts and circumstances which tend to support the testimony of [the victim] and from which, together with his testimony as to the principal fact, the inference of guilt of the defendant must be drawn beyond a reasonable doubt before you may find him guilty."

There is no merit to defendant's contention that instruction No. 9 was not a correct statement of the law. As previously pointed out, there was sufficient corroboration as to the "principal fact in issue," which was the use of force by defendant.

It should also be pointed out that defendant did not object to the wording of instruction No. 9 at the jury instruction conference and did not complain about it in his motion for a new trial. The applicable rule is as follows: "We have repeatedly said that alleged errors not raised in the trial court and not referred to in a motion for a new trial will not be considered by this court on appeal. In order to obtain a review of alleged errors occurring during the trial, such errors must be pointed out to the trial court in a motion for a new trial and a ruling thereon obtained." *State v. Lytle*, 194 Neb. 353, 359, 231 N.W.2d 681, 686 (1975).

The defendant, in the instant case, did not deny that he had homosexual intercourse with the victim, nor did he challenge the victim's testimony as to the time or place of the sexual act. In a broad sense, the defendant's testimony corroborates the victim's testimony except as to whether the penetration was with the victim's consent or against his will.

On the issue of consent, *State v. Pankey*, 202 Neb. 595, 276 N.W.2d 233 (1979), held that, "[w]here resistance would obviously be useless, fruitless, or foolhardy, it is wholly unrealistic to require affirmative direct demonstration of the utmost physical resistance as proof of the [victim's] opposition and lack of consent. It is only required that the [victim] make reasonable resistance in good faith under all the circumstances . . . ." *Id.* at 597, 276 N.W.2d at 234-35.

More importantly, did the victim make a timely complaint after the acts were committed? "Immediate complaint is directly relevant on the issue of corroboration. In *State v. Chaney*, 184 Neb. 734, 171 N.W.2d 787 (1969), we held that in a prosecution for sexual assault after the victim has testified to the commission of the offense, it is competent to prove in corroboration of that testimony as to the main fact that, within a reasonable time after the alleged outrage, the victim made complaint to a person to whom a statement of such an occurrence would naturally be made." *State v. Tatum*, 206 Neb. 625, 628-29, 294 N.W.2d 354, 356 (1980).

It is not necessary that the victim of the assault make the complaint at the first available opportunity, especially if the victim is afraid and ashamed of what has happened. It is only necessary that the complaint be within a reasonable amount of time following the assault. *State v. Aby*, 205 Neb. 267, 287 N.W.2d 68 (1980).

In this case, the victim first complained of the assault on Monday, January 29, 1979, the day following the early Sunday morning sexual assault. This complaint was made in a telephone call to his mother at about noon, while he was a trustee and able to leave the cell block. He was upset when he called. He complained of the assault to Kenneth Johnson, the jail administrator, on the same day, January 29, 1979, and was upset and crying. He also gave a full report to a detective of the Lincoln Police Department on that same day.

The victim stated that he did not report the incident on Sunday, January 28, 1979, because the defendant was near him in the cell block or in the hallway most of the day, and the victim was still scared. He also testified that he attempted, without success, to contact his attorney on Sunday to tell him about the assault.

The victim was never questioned as to why he did not report the assault to his mother when she visited him at the jail on Sunday, January 28, 1979.

The jury had an opportunity to observe the witnesses

as they testified to determine whether to believe the defendant's or the victim's version of the incident. "[A] question of fact as to the issue of consent was created.

"In determining the sufficiency of evidence to sustain a conviction, however, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence. Such matters are for the jury. [Citations omitted.] The verdict of a jury must be sustained if taking the view most favorable to the State, there is sufficient evidence to support it." *State v. Pankey* at 597, 276 N.W.2d at 235.

Under all of the circumstances, the victim's complaint was made within a reasonable period of time after the assault took place, and the use of force by the defendant was corroborated.

Defendant's next assignment of error is that the trial court should have instructed the jury on the nature and purpose for which impeachment evidence was received.

On cross-examination, the defendant was questioned as to whether or not he had been involved in fights in the jail or had threatened jail personnel. Defendant claims that these questions were intended to impeach his testimony that he was a peacemaker in jail, and, therefore, the jury should have been instructed on the effect of impeachment testimony. Defendant did not request such an instruction. The State claims that defendant put his character into issue by testifying that he was a peacemaker, and therefore, its questions were to test his credibility on that issue. An instruction on character evidence was given. It was not necessary to instruct the jury on impeachment evidence because the prosecution's questions were only asked to rebut defendant's testimony.

As with instruction No. 9, discussed above, the defendant did not complain at the jury instruction conference of the failure to give an impeachment instruc-

tion nor did he raise the issue in his motion for a new trial.

The assignments of error of the defendant are without merit. The judgment of the trial court is affirmed.

AFFIRMED.