STATE OF NEBRASKA, APPELLEE, V. CHARLES SCHON, APPELLANT.
418 N.W.2d 242

Filed January 29, 1988.   No. 86-1011.

Thomas M. Kenney, Douglas County Public Defender, and Timothy P. Burns, for appellant.

Robert M. Spire, Attorney General, and Mark D. Starr, for appellee.

BOSLAUGH, WHITE, CAPORALE, SHANAHAN, and GRANT, JJ., and BRODKEY, J., Retired, and COLWELL, D.J., Retired.

COLWELL, D.J., Retired.

Charles Schon, defendant, appeals a Douglas County Court conviction of third degree sexual assault, Neb. Rev. Stat. § 28-320 (Reissue 1985), which, on appeal, was later affirmed by the district court. The only assigned error is that the evidence was insufficient to sustain the conviction; particularly, that there was a lack of independent corroboration. We affirm.

The alleged assault occurred on February 4, 1986, when defendant, age 31 years, was living in Omaha, Nebraska, with his wife, Pamela, and her 6-year-old daughter, M.G., the victim. Sometime after 10:20 that night, when Pamela was working away from the family home, the defendant was babysitting M.G. and entertaining two friends, a female, described as "practically" a prostitute, and a male friend. M.G. testified that defendant pulled her nightgown up, held her legs, and "[k]issed [her] down there," with "down there" later described as her genitals. Defendant then used vile language in threatening physical punishment to M.G. if she ever told anyone about the incident. M.G. reacted by becoming afraid of the defendant. Defendant described the threats as a means of teasing. Pamela testified that following February 4, she noticed changes in M.G.'s behavior, such as bad dreams and bedwetting. About 10 days after the incident, Pamela moved to her mother's house in Omaha, taking M.G. with her. Shortly thereafter, M.G. related the details of the February 4 incident to Pamela, who notified the Omaha police. Officer Mary Bruner

conducted an official police investigation.

Defendant was the only witness for his defense. He admitted being present at the time and place charged. He denied the alleged assault. The evidence shows that defendant was a heavy drug user at the time and that he had three prior felony convictions. Pamela, M.G., and Police Officer Mary Bruner testified for the State. Following his conviction, the defendant was sentenced to serve 180 days in confinement.

Section 28-320 provides:

> (1) Any person who subjects another person to sexual contact and (a) overcomes the victim by force, threat of force, express or implied, coercion, or deception, or (b) knew or should have known that the victim was physically or mentally incapable of resisting or appraising the nature of his or her conduct is guilty of sexual assault in either the second degree or third degree.
>
> . . . .
>
> (3) Sexual assault shall be in the third degree and is a Class I misdemeanor if the actor shall not have caused serious personal injury to the victim.

The review on appeal by the district court was limited to an examination of the record for error. Neb. Rev. Stat. § 29-613 (Reissue 1985); *State v. Smith*, 199 Neb. 368, 259 N.W.2d 16 (1977).

"In a sexual assault case, the victim need not be independently corroborated on the particular acts constituting sexual assault, but must be corroborated on the material facts and circumstances tending to support the victim's testimony about the principal fact in issue." (Syllabus of the court.) *State v. Wounded Arrow*, 207 Neb. 544, 300 N.W.2d 19 (1980). After the victim has testified to the commission of the offense, it is competent to prove in corroboration of that testimony as to the main fact that, within a reasonable time after the alleged assault, the victim made complaint to a person to whom a statement of such an occurrence would naturally be made, especially if the victim is afraid and ashamed of what has happened. *Id.*

Where a trial court has entered a judgment of conviction in a criminal case, that judgment will not be set aside on appeal for

insufficiency of the evidence if the evidence sustains some rational theory of guilt. A judgment of conviction will not be reversed by the Supreme Court on appeal unless the evidence is so lacking in probative force that it is insufficient as a matter of law. *State v. Painter*, 224 Neb. 905, 402 N.W.2d 677 (1987).

Bearing in mind that this court on appeal neither resolves conflicts in the evidence nor passes on the credibility of the witnesses, *State v. Jackson*, 222 Neb. 384, 383 N.W.2d 794 (1986), the evidence shows that the victim's descriptions of the assault and the surrounding circumstances that she related to her mother, to the investigating officer, and during her incourt testimony, were direct and consistent in establishing the sexual assault charged in the complaint. The corroboration of the material facts and circumstances of the assault was shown by the changes in the victim's habits, crying, and fear of the defendant, followed by the report to the police that was made within a reasonable time after the assault.

The evidence here is not unlike *State v. Aby*, 205 Neb. 267, 287 N.W.2d 68 (1980), where the victim, age 10 years, did not report the assault for more than 3 months after the event. There, we found that the record as a whole supplied corroboration and supported the conviction.

AFFIRMED.

WHITE, J., concurs in the result.

SHANAHAN, J., concurring.

While there is sufficient evidence to sustain Schon's conviction and, therefore, I concur in the majority's conclusion that Schon's conviction must be affirmed, this court continues to cling to an anachronistic evidential requirement, namely, the requirement of corroboration for a victim's testimony in a prosecution for the crime of sexual assault—a rule judicially fashioned long before safeguards, both constitutional and procedural, were impressed on the current criminal justice system. Longevity of a rule of law does not necessarily indicate the rule's soundness, for, as observed by Holmes:

It is revolting to have no better reason for a rule of law than that so it was laid down in the time of Henry IV. It is still more revolting if the grounds upon which it was laid down have vanished long since, and the rule simply

persists from blind imitation of the past.

Address by O.W. Holmes, 10 Harv. L. Rev. 457, 469 (1897).

Although not laid down in the 14th or 15th century during the time of Henry IV, the requirement of corroboration for testimony from a victim of a sexual assault apparently germinated in the 17th century, as reflected in the writings of Sir Matthew Hale, Lord Chief Justice of the Court of King's Bench from 1671 to 1676. According to Hale, a conviction for rape must be sustained only with "concurrent evidence to make out the fact," because rape or any sexual assault "is an accusation easily to be made and hard to be proved, and harder to be defended by the party accused, tho never so innocent." See *People v. Rincon-Pineda*, 14 Cal. 3d 864, 874, 538 P.2d 247, 254, 123 Cal. Rptr. 119, 126 (1975).

Hale's corroboration rule originated in an era without constitutionally guaranteed due process, including the fundamental presumption of innocence and basic burden on the State to prove an accused's guilt beyond a reasonable doubt, as well as the constitutionally protected rights to present witnesses, by compulsory attendance if necessary, and, not the least, to have effective assistance of counsel to cross-examine the accuser. See, *People v. Rincon-Pineda, supra; Arnold v. United States*, 358 A.2d 335 (D.C. 1976). Some 200 years after Hale, Nebraska adopted Hale's corroboration rule, see *Mathews v. State*, 19 Neb. 330, 27 N.W. 234 (1886), which, by this court's action today, is still alive, notwithstanding its jurisprudential infirmity.

As pointed out in *State v. Cabral*, 122 R.I. 623, 627, 410 A.2d 438, 441 (1980):

The requirement for independent corroboration in sex-offense cases has been the subject of ever increasing criticism. Contemporary empirical studies suggest that the factors employed to support the corroboration requirement do not justify the rule. There is a great reluctance to report a rape. [Citations omitted.] Juries generally tend to view rape charges with skepticism and suspicion, especially when there is a suggestion of willingness or agreement on the part of the victim [citations omitted], and convictions, in the absence of

aggravating circumstances, are the exception rather than the rule.

Neb. Evid. R. 601 (Neb. Rev. Stat. § 27-601 (Reissue 1985)) provides: "Every person is competent to be a witness except as otherwise provided in these rules." However, the Nebraska Evidence Rules neither specifically refer to a sexual assault victim's competency or credibility as a witness nor implicitly contain a corroboration requirement in sexual assault cases. Required corroboration, therefore, reflects a rather unsubtle judicial predetermination that a victim in a sexual assault case presumptively and inherently lacks credibility. Consequently, it is indeed ironic that Nebraska permits a defendant's first degree murder conviction to be "supported by the uncorroborated testimony of an accomplice," *State v. Joy*, 220 Neb. 535, 537, 371 N.W.2d 113, 115 (1985), but a defendant's sexual assault conviction is not supported by the uncorroborated testimony of the victim. As exemplification of the evidential incongruity involving sexual assault cases, under existing Nebraska law a person who has been kidnapped and later sexually assaulted by the abductor may testify concerning both crimes, but the victim's uncorroborated testimony is insufficient to sustain a conviction on the sexual assault charge, whereas no corroboration of the victim's testimony is required to sustain a conviction on the kidnap charge. In the foregoing illustration, reconciliation of the different standards for sufficiency of the evidence is impossible, and justification for such difference is nonexistent.

Although present Nebraska practice prohibits a trial judge from commenting on the evidence submitted to a jury, the outdated and discriminatory corroboration rule is most assuredly a derogatory comment about a victim's testimony in a sexual assault case. As a result of the corroboration rule, the sexual assault victim comes into the court stigmatized as untrustworthy, because the victim is one in a class of witnesses whose credibility is suspect and who are not entitled to the same credibility otherwise accorded a victim testifying about a crime other than a sexual assault. Accordingly, so long as the corroboration requirement exists for a sexual assault case, there is a somewhat hollow ring to the principle that this court, in its

appellate review, does not pass "on the credibility of the witnesses." A jury, given appropriate judicial instruction on the factors affecting a witness' credibility (NJI 1.41), is capable of determining whether a witness, including a sexual assault victim, conveys credence.

When this court last considered and reaffirmed the requirement of corroboration for testimony of victims in sexual assault cases, namely, *State v. Daniels*, 222 Neb. 850, 388 N.W.2d 446 (1986), it appeared that two jurisdictions—the District of Columbia and Nebraska—retained the judicially originated rule of corroboration for a victim's testimony to convict a defendant on a charge of sexual assault, although in the District of Columbia the rule was restricted to cases involving sexual assault of a child. However, in *Gary v. United States*, 499 A.2d 815 (D.C. 1985), the corroboration rule was entirely abolished in the District of Columbia, when the court stated:

> The constitutional protections provided the defendant are adequate in a sex case and the corroboration requirement no longer serves a useful purpose. [Citations omitted.] The asserted purpose of the corroboration requirement was to support and test the credibility of the complaining witness. There is no reason to distinguish between a mature female and a mature male sex offense victim. Nor is there any logical reason to raise barriers to the jury evaluation of the credibility of a minor in a sex offense where we do not require it in other situations. Courts have too long "discounted reports of sexual attacks by children." [Citations omitted.]
>
> . . . .
> . . . We conclude "[i]t is long past the time that this court should follow the example of most of the jurisdictions in this country and totally eliminate the last vestiges of this outdated, discriminatory rule." [Citation omitted.]

499 A.2d at 833-34.

Why the State does not advocate abolition of the corroboration requirement is an enigma. Nevertheless, the judicially created corroboration rule in Nebraska should be judicially abolished. While some might believe that our

retention of the corroboration rule is steadfast dedication, others might view our position as clutching a rule without a reason. By retaining the antiquated and unnecessary corroboration rule regarding a victim's testimony in sexual assault cases, this court has never been more alone than today, when we are wholly alone, and, thus, have realized Garbo's wish.