STATE OF NEBRASKA, APPELLEE, V. ABIE ANTILLON, APPELLANT.
426 N.W.2d 533

Filed July 29, 1988.    No. 87-823.

Donald W. Walters for appellant.

Robert M. Spire, Attorney General, and LeRoy W. Sievers for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

The defendant was found guilty by a jury in Hall County of two counts of first degree sexual assault of a child. He was sentenced to two concurrent terms of 15 to 20 years' incarceration. He appeals the judgment and sentences.

Defendant's assignments of error are: (1) The evidence was insufficient to support the convictions; (2) the court erred in ruling that the victim was not a party-opponent for purposes of impeachment under Neb. Rev. Stat. § 27-613 (Reissue 1985); (3) the court erred in allowing the State to amend the information at the conclusion of the State's case; and (4) the sentences were excessive.

The defendant, Abie Antillon, was approximately 23 years old at the time of the incidents. He and Catherine Bucholz moved to 414 North Oak in Grand Island in June 1985. They were married in January 1986. Also living with them were Abie, Jr., born to the defendant and Catherine in March 1984, and the victim, Catherine's son from a former marriage, born in August 1978.

In June 1986, the victim went to visit his maternal grandparents in Lincoln. While there, his uncle took him to a

movie. On the way home, the victim told his uncle that the defendant had physically and sexually abused him. His uncle encouraged him to tell his grandparents about the incidents, which he did. The grandfather then "contacted authorities."

Steven Wilson, a Child Protective Services worker, met with the victim on three occasions to interview him about the allegations. Subsequently, the defendant was charged with two counts of first degree sexual assault on a child: one incident in the bedroom and one in the living room.

The victim described the assaults at trial. He testified that the first incident took place in his bedroom. As the victim was getting ready for bed, the defendant entered the former's bedroom with "a weird look on his face," pulled down his own pants and underwear, and pushed the victim's head down. The defendant made a fist and told the victim that he would "punch [his] lights out" if he told anyone. The defendant then forced the victim to "suck his wienie" until "white stuff" came out. A friend of the defendant's then knocked on the door, and the defendant left the bedroom.

The second incident occurred in the defendant's bedroom. (This was actually the same bedroom in which the first incident took place, but the defendant and the victim had traded bedrooms since that time.) The defendant told the victim to come into his bedroom, shut off the light, and forced the victim again to perform oral sex on him. The victim testified that he got a "funny taste" in his mouth and that "[i]t taste- —It just — It felt just like it did in the other one." Afterward, the defendant threatened the victim with a knife and told him that he would throw the victim's little brother "against the walls and out the window" if the victim told anyone what had happened.

The defense attempted to impeach this testimony by cross-examining Wilson concerning certain inconsistencies between the victim's testimony at trial and the information he gave in an earlier adjudication hearing attended by Wilson. The judge disallowed this questioning.

At the close of the State's evidence, the State moved to amend the information to conform with the evidence by substituting "the living room" with "a bedroom." The court allowed the amendment, over objection by the defense. The defense then

moved to dismiss the case. The court ruled, "The motions of the defendant for a directed verdict are denied."

The defendant argues that recent cases lessening the stringent requirement of corroboration have lost sight of the reasons behind the corroboration rule, i.e., protection from guilty verdicts based solely on sympathy and passion. He asserts that the only evidence adduced which supports the verdict is (1) the residence of the victim and defendant, (2) the fact that the defendant babysat the victim while his mother worked, and (3) statements made by the victim to third parties. Since (1) and (2) are as consistent with innocence as with guilt, it is (3), the victim's statements to others, which supports the verdict. These statements, claims the defendant, are riddled with inconsistencies and are not sufficient corroboration by themselves.

The State responds with a call for the abolition of the corroboration rule. The rationale for the corroboration rule simply does not exist, according to the State. Moreover, it claims, even with the corroboration requirement in this case, the evidence (i.e., statements made by the victim to his uncle, grandparents, and caseworker) is sufficient to support the jury's verdict.

It is not necessary to eliminate the corroboration rule in order to uphold the jury's verdict in this case. As in *State v. Stone*, 228 Neb. 389, 422 N.W.2d 568 (1988), also a case involving the sexual assault of a child,

> There were many conflicts in the evidence and some inconsistencies between testimony given [earlier] and at the trial. These were all questions for the trier of fact. In resolving a challenge to the sufficiency of the evidence to sustain a conviction in a criminal case, it is not the province of this court to resolve conflicts in the evidence, pass on the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence.

*Id.* at 391, 422 N.W.2d at 570. "[I]f, taking the view most favorable to the State, there is sufficient evidence to sustain the conviction, it will be upheld on appeal." *State v. Polyascko*, 224 Neb. 272, 275, 397 N.W.2d 633, 635 (1986).

As to the corroboration requirement, this court has held:

" ' "In a sexual assault case, the victim need not be independently corroborated on the particular acts constituting sexual assault, but must be corroborated on the material facts and circumstances tending to support the victim's testimony about the principal fact in issue." . . .' " *State v. Stone, supra* at 390, 422 N.W.2d at 569. The court then determined that the fact that the victim made a complaint to a person to whom a statement of such an occurrence would naturally be made is competent corroboration of the victim's testimony. In *Stone*, the fact that the 12-year-old victim described the incidents to her mother, who later contacted police, was sufficient evidence of corroboration.

In *State v. Schon*, 227 Neb. 482, 418 N.W.2d 242 (1988), the defendant sexually assaulted his wife's 6-year-old daughter. This court found that the fact of the assault was established by the victim's descriptions of the assault to her mother, to the investigating officer, and to the court during the trial. Furthermore, these facts were corroborated by a change in the victim's behavior and by a "report to the police that was made within a reasonable time after the assault." *Id.* at 485, 418 N.W.2d at 244.

In *State v. Polyascko, supra*, also involving the sexual assault of a child, the victim told her school counselor of the incident, who in turn contacted police. The victim then told the police officer the facts of the assault. The court found that this was a sufficient corroboration of the victim's account of the assault to support the verdict. The court took note of the decision in *State v. Wounded Arrow*, 207 Neb. 544, 300 N.W.2d 19 (1980), in which a conviction for sexual assault was upheld based upon corroborating evidence which consisted of the facts told by the victim to his mother, a jail administrator, and a police detective; and *State v. Watkins*, 207 Neb. 859, 301 N.W.2d 338 (1981), in which the defendant's conviction for sexually assaulting his minor stepdaughter was upheld, and the only testimony corroborating the victim's testimony was testimony by the victim's mother and a police officer, to whom the victim had complained.

In the present case, the victim told his uncle about the assaults. At the uncle's suggestion, the victim then related his

account to his grandmother and then to his grandfather. When authorities were contacted, the victim discussed the incidents with a caseworker. The testimony of the victim was adequately corroborated by the testimony of those to whom he told of the assaults.

The second prong of defendant's first assignment of error is that the court should have sustained his motion for dismissal. This argument is essentially an extension of the defendant's first argument—i.e., that the evidence was insufficient to sustain the conviction. The defendant again points to "major discrepancies" in the victim's "uncorroborated" testimony, "mak[ing] the events as related by the victim so doubtful in character that a finding of guilt thereon can only result from passion or prejudice." Brief for appellant at 21-22. The State responds by stating that the jury found the victim's testimony to be credible enough to support a guilty verdict and that there is sufficient evidence to uphold its findings.

Contrary to the defendant's assertion, the evidence was not so lacking that a guilty verdict could only be the result of emotion, rather than factfinding. The jury found the victim's testimony to be credible, despite the (minor) inconsistencies which developed. Making a judgment as to the credibility of the witnesses and the sufficiency of the evidence was a function of the jury. The Supreme Court will not resolve conflicts in the evidence, judge the credibility of witnesses, evaluate explanations, or reweigh the evidence presented. Those responsibilities belong to the jury. See *State v. Brown*, 225 Neb. 418, 405 N.W.2d 600 (1987).

To the extent that defendant's argument encompasses the denial of the motion to dismiss made at the close of the State's evidence, the State at that point was entitled to have all its relevant evidence accepted or treated as true, every controverted fact as favorably resolved for the State, and every beneficial inference reasonably deducible from the evidence. *State v. Lane*, 227 Neb. 687, 419 N.W.2d 666 (1988).

The court properly refused to dismiss the case or to direct a verdict of not guilty. The evidence, despite minor inconsistencies, nevertheless overwhelmingly pointed to the defendant's guilt and presented a question for the jury to

decide.

Defense counsel, in cross-examining Wilson about his observations of the victim's testimony during the prior adjudication hearing, attempted to question Wilson about prior inconsistent statements made by the victim at the hearing. The court sustained the State's objection to this questioning as "improper impeachment of a witness who's testified and who is available for cross-examination." Counsel later renewed his request to use this testimony for impeachment under § 27-613 and Neb. Rev. Stat. § 27-801(4)(b) (Reissue 1985). The court held that these statutory sections were inapplicable, as the victim was not a party-opponent in the case.

Section 27-613(2) provides that a witness who is impeached by a prior inconsistent statement must be given an opportunity to explain or deny the prior statement, *unless* that statement is an admission of a party-opponent as defined in § 27-801(4)(b). (Section 27-801(4)(b) provides that statements made or adopted by a party are not hearsay.) Thus, the defendant argues that since the victim is a "party-opponent" in this case, he may be impeached by prior inconsistent statements without being given the opportunity to explain or deny those statements. A "party" is a person whose name is designated on the record as a plaintiff or defendant. *M & A Electric Power Cooperative v. True*, 480 S.W.2d 310 (Mo. App. 1972). The record in this case clearly designates the State as plaintiff and Abie Antillon as defendant. The victim appears as a witness only.

A party, in general, is one who has a right to control the proceedings, to make a defense, to adduce and cross-examine witnesses, and to appeal from the judgment. *City of Chattanooga v. Swift*, 223 Tenn. 46, 442 S.W.2d 257 (1969); *Gibbons v. Belt*, 239 Ia. 961, 33 N.W.2d 374 (1948). The victim possessed none of those rights as the victim in this case.

"Party" is a technical word with a precise legal meaning. It refers to those by or against whom a legal suit is brought; the party plaintiff or defendant. All others who may be affected by the suit, indirectly or consequentially, are persons interested, but are not parties. *Banks v. Rockwell Intern. N. Am. Aircraft Operations*, 666 F. Supp. 1053 (S.D. Ohio 1987); *Golatte v. Mathews*, 394 F. Supp. 1203 (M.D. Ala. 1975). Again, it is clear

that the victim, as a victim-witness, did not meet the legal definition of party to the case. His role in the action was not to bring or defend against charges, but merely to provide testimony about the allegations. As such, he was not a party-opponent, as the lower court properly ruled.

At the close of the State's case, the prosecutor moved to amend the information for count II to conform with the evidence which had been presented at trial. The prosecutor requested that the change be made to allege that the second incident occurred in "a bedroom," rather than "the living room" as originally pled. The defense objected, asserting the possibility of a double jeopardy problem, and asked that the defendant be permitted to defend based upon the information as originally filed. The court took the motion under advisement.

The following morning, the court ruled that the State be allowed to amend the information to strike the reference to "living room." The defense was then given the opportunity to show how the defendant was prejudiced by the ruling. The defense counsel noted that the entire defense was based on inconsistencies between the victim's prior statements and his testimony at trial. By permitting the amendment, claimed defense counsel, an inconsistency was eliminated and the defense was weakened. Furthermore, the jury could become "confused" by changing the charges against the defendant during the trial. The court nevertheless allowed the ruling to stand.

The general rule regarding the amendment of informations was recently stated in *State v. Aldrich*, 226 Neb. 645, 413 N.W.2d 639 (1987). Quoting from *State v. Gascoigen*, 191 Neb. 15, 213 N.W.2d 452 (1973), this court held: " '[T]he District Court, in its discretion, may permit a criminal information to be amended at any time before verdict or findings if no additional or different offense is charged and the substantial rights of the defendant are not prejudiced.' " 226 Neb. at 646, 413 N.W.2d at 640.

In general, an information is sufficient if it sets forth the crime in the language of the statute or the equivalent thereof. *State v. McGee*, 221 Neb. 557, 378 N.W.2d 674 (1985). In

addition, the information must " 'inform the accused, with reasonable certainty, of the charge being made against him in order that he may prepare his defense thereto and also be able to plead the judgment rendered thereon as a bar to a later prosecution for the same offense.' " *Id.* at 559, 378 N.W.2d at 676. See, also, *State v. Jackson*, 225 Neb. 843, 408 N.W.2d 720 (1987).

It has been established that the addition of a nonessential allegation to the information does not change the offense charged, *State v. Gascoigen, supra*; *State v. Last*, 212 Neb. 596, 324 N.W.2d 402 (1982), and the defendant does not claim that the amendment creates an additional or different charge. Rather, the defendant contends that the second prong of the test was not met in his case; i.e., the defendant's substantial rights were prejudiced by the amendment.

Although this court has apparently not confronted the specific issue of whether amending the information as to the location of the offense constitutes prejudice to the defendant, other state courts have considered the topic. For an overview of state court decisions upholding the amendment of an information concerning the location of the offense, see, *Morris v. State*, 273 Ind. 614, 406 N.E.2d 1187 (1980) (defect in information which read "Jefferson, Missouri," was immaterial, and thus allowing amendment so that information read "Jefferson City, Missouri," was not error); *Felchlin v. State*, 159 Ga. App. 120, 282 S.E.2d 743 (1981) (amendment to change site of offense from Cleveland Avenue to Cleveland Road was not a material change requiring a mistrial or continuance); *People v. McQuiston*, 264 Cal. App. 2d 410, 70 Cal. Rptr. 531 (1968) (court did not abuse discretion in permitting amendment of information to correct date and place of the charge); *State v. McLallen*, 522 S.W.2d 1 (Mo. App. 1975) (amendment of information to work a technical change in title of one of the burgled premises was proper, since such amendments did not alter the charge or defendant's defense); and *State v. Bleau*, 132 Vt. 101, 315 A.2d 448 (1974) (location of offense amendment, made 5 minutes prior to commencement of trial in order to conform to evidence prosecutor knew would be forthcoming at trial, was allowable).

In *State v. Aston*, 412 S.W.2d 175 (Mo. 1967), the court allowed the State to amend the information at the close of the evidence to reflect that the burglary occurred at the victim's tavern, not his residence. The court held at 182: "Such amendments are governed by our Rule 24.02 which permits an amendment at any time before verdict if no 'additional or different offense is charged and if substantial rights of the defendant are not prejudiced.' " Note that this rule parallels the rule of law in Nebraska concerning amendments laid out in *Aldrich, supra,* and *Gascoigen, supra.* The court concluded at 182: "We are convinced that no substantial rights of defendant were prejudiced in that he and his counsel knew all along, and *specifically* from the very beginning of the trial, what the charge actually was." (Emphasis in original.)

In *State v. Brean*, 136 Vt. 147, 385 A.2d 1085 (1978), the court upheld an amendment to the information made by the prosecutor at the close of the State's case. The amendment changed the alleged location of the DWI from Connecticut to Vermont, and added the name of the county, which had been left blank in the original information. Once again, the governing rule was that "the trial court may permit an information to be amended at any time after trial has commenced and before verdict for any purpose 'if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced.' " *Id.* at 149, 385 A.2d at 1087. The court found that the amended information did not charge an additional or different offense. Furthermore, held the court,

> we can find no prejudice from a review of the record. . . . The officer's affidavit of probable cause set forth that the offense occurred in Vermont. Defendant obviously understood when and where the alleged offense took place. That defendant was not "surprised" by the amendment is evidenced, in part, by the fact that he made no motion for continuance at the time the motion to amend was granted.

*Id.* at 149-50, 385 A.2d at 1087.

Thus, a consideration in determining the propriety of the amendment and whether the defendant was prejudiced thereby

is whether the amendment "surprised" the defense. If the defendant was aware before the trial that the information did not comport with the evidence, theoretically he has not been prejudiced when the information is corrected to reflect that evidence. Such is the case here.

The court sentenced the defendant to concurrent terms of not less than 15 nor more than 20 years on each count. The defendant argues that this was an excessive sentence which was not commensurate with the offense. He points out that "no physical harm was done to the victim," as is possible in sexual assault cases, and that the defendant is only 24 years old. Brief for appellant at 22.

> This court has repeatedly held, "where the punishment of an offense created by statute is left to the discretion of the court to be exercised within certain prescribed limits, a sentence imposed within such limits will not be disturbed on appeal unless there appears to be an abuse of discretion."

*State v. Moreno*, 228 Neb. 210, 218, 422 N.W.2d 56, 62 (1988).

The defendant was convicted of first degree sexual assault, a Class II felony under Neb. Rev. Stat. § 28-319 (Reissue 1985). Neb. Rev. Stat. § 28-105 (Reissue 1985) provides that a Class II felony is punishable by a minimum of 1 and a maximum of 50 years in prison. The sentence of 15 to 20 years on each count was well within the statutory range of 1 to 50 years.

> In imposing a sentence a trial court should consider inter alia the defendant's age, mentality, education, experience, and social and cultural background, as well as his past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime.

228 Neb. at 218, 422 N.W.2d at 62. Furthermore, "The seriousness of the offense is an important factor in the setting of a sentence," and "Evidence as to a defendant's life, character, and previous conduct is highly relevant to the determination of a proper sentence." *Id.* at 218-19, 422 N.W.2d at 62. Additionally, § 28-319(2) provides that in a first degree sexual assault case, "The sentencing judge shall consider whether the

actor shall have caused serious personal injury to the victim in reaching his decision on the sentence."

The defendant has a history of criminal behavior and incarceration which dates back to 1979, when he was 16. He did not complete high school, he is continually unemployed, and there is indication of drug and alcohol abuse (as well as drug dealing). The crime itself, although not involving actual physical harm to the victim, will undoubtedly have a lasting and sizable psychological impact on the boy. The defendant shows no remorse over his activities; to the contrary, he denies the allegations and feels that "any sentence, I don't — I don't think any sentence that the Court gives would be right."

Given the nature of the crime and the background of the defendant, the sentences given by the trial judge are not an abuse of discretion.

The judgment of the district court is affirmed.

AFFIRMED.

SHANAHAN and GRANT, JJ., concur.