STATE OF NEBRASKA, APPELLEE, V. LESLIE R. ANDERSEN,
APPELLANT.
436 N.W.2d 537

Filed March 10, 1989.   No. 88-087.

Robert C. Wester, Assistant Sarpy County Public Defender, for appellant.

Robert M. Spire, Attorney General, and Susan M. Ugai for appellee.

BOSLAUGH, CAPORALE, SHANAHAN, and GRANT, JJ., and CARLSON, D.J.

PER CURIAM.

The defendant, Leslie R. Andersen, was convicted of sexual assault on his 12-year-old stepdaughter and two counts of third degree assault on his wife. He was sentenced to imprisonment for 2 years for the sexual assault and to 6 months on each of the assault charges, the latter sentences to run concurrently with each other but consecutively to the sexual assault sentence. He

has appealed and contends that the evidence was not sufficient to sustain the sexual assault conviction and that the trial court erred in failing to sustain the objections to certain testimony concerning the sexual assault.

Since the errors assigned and discussed by the appellant concern only count I, the sexual assault count, the evidence concerning counts III and IV, the third degree assault counts, will not be discussed.

The record shows that the sexual assault occurred sometime in April 1987. The victim testified that while she was in her bed, she awoke to find the defendant had his hands on her "private area" and was rubbing up and down. The defendant had raised her nightgown and was rubbing her privates up and down on the outside of her underwear. The defendant then pulled down her underwear and rubbed her vaginal area and, while doing so, penetrated her vagina. Then, the defendant pulled her panties back up and kissed her on her vaginal area, through the panties. The victim did not let the defendant know she was awake, because she was scared, but rolled over so the defendant would stop. During the incident the defendant was "breathing funny." After the defendant had left, the victim got into bed with her sister and told her what happened.

The next morning, the victim told her brother about the incident. At the trial the brother testified that the victim had told him about the incident the morning after it occurred. The victim also told her sister and mother about the incident. She told her mother that the defendant had touched her in her private area, and pointed out where she had been touched. According to the victim, she, her mother, and the defendant had a conversation in which the defendant admitted that the incident had happened.

The mother testified that in April of 1987, the victim told her that the night before the defendant had come into her room and touched her private area. The mother went on to testify that the victim said that the assault had not occurred but that the victim wanted her and the defendant to stop fighting. She further testified that she did not remember telling a juvenile court employee assigned to the case that the defendant had admitted to the assault, and testified that the employee's testimony that

she, the mother, had said that the defendant had gone into the victim's bedroom and touched the victim's stomach was not the truth.

On June 10, 1987, the victim's mother called the police because she and the defendant were fighting. Officer Catherine Glesmann was one of the police officers who responded to the call. The victim told Officer Glesmann about the sexual assault but did not relate specific details of the assault. She merely indicated to Glesmann the area of her body which the defendant had touched.

With regard to the delay in reporting the incident, the victim testified that her mother had said that the mother would be "thrown in jail" along with the defendant for not reporting the assault immediately.

After the June 10 assault on Mrs. Andersen, all three children were taken to the police station for questioning. Officer Geraldine McWhirt testified that when she interviewed the victim, she was told the details of the assault. When Robin Gabriel, a sexual assault investigator with the Sarpy County sheriff's office, interviewed the victim on June 11 or 12, the victim told Gabriel the details of the assault but said that it had occurred in June.

Officer Timothy C. Estes testified that he interviewed the victim on the 10th of June and that the victim said she had been assaulted, but was having difficulty talking to him because he was a man. Estes interviewed the victim about a week later, at the request of Mrs. Andersen, who had called Estes to tell him that she thought the children were not telling the whole truth about the sexual assault. Estes then testified that the brother had told him that Mrs. Andersen asked the children to lie about the sexual assault and tell the police that the defendant had touched the victim above the panty line, in an effort to wake the child. Later, the victim told Officer Estes that the sexual assault had not occurred in June when the police were called, but had happened 2 or 3 months earlier. The victim testified that her mother kept telling her that she was lying and to tell the police to drop the charges, that they wanted the defendant home.

A physician, Susan Sucha, examined the victim on June 11, 1987, and testified that the victim said that while she was

sleeping, she awakened to find that her stepfather had his hand down her panties, touching her. Sucha testified that she did not find any signs of injury to the victim but that she would not have expected to find signs of injury with the kind of allegation the child was making—that she was touched or fondled.

The evidence which has been summarized was sufficient, if believed, to sustain a finding of guilty beyond a reasonable doubt on the sexual assault charge.

"In determining the sufficiency of evidence to sustain a criminal conviction, this court does not resolve conflicts in the evidence, pass upon the credibility of witnesses, determine the plausibility of explanations, or weigh the evidence, and a verdict rendered thereon must be sustained if, taking the view of such evidence most favorable to the State, there is sufficient evidence to support it."

*State v. Hurlburt*, 218 Neb. 121, 123, 352 N.W.2d 602, 603 (1984); *State v. Schenck*, 222 Neb. 523, 384 N.W.2d 642 (1986).

"In a sexual assault case, the victim need not be independently corroborated on the particular acts constituting sexual assault, but must be corroborated on the material facts and circumstances tending to support the victim's testimony about the principal fact in issue." . . . *State v. Wounded Arrow*, 207 Neb. 544, 300 N.W.2d 19 (1980). After the victim has testified to the commission of the offense, it is competent to prove in corroboration of that testimony as to the main fact that, within a reasonable time after the alleged assault, the victim made complaint to a person to whom a statement of such an occurrence would naturally be made, especially if the victim is afraid and ashamed of what has happened.

*State v. Schon*, 227 Neb. 482, 484, 418 N.W.2d 242, 244 (1988). See, *State v. Stone*, 228 Neb. 389, 422 N.W.2d 568 (1988); *State v. Polyascko*, 224 Neb. 272, 397 N.W.2d 633 (1986). Under the circumstances in this case, the complaints made by the victim were made within a reasonable time after the assault.

An important issue in the case was the credibility of the victim. Although the victim testified directly concerning the assault, she originally stated that it had occurred in June rather

than in April of 1987. The mother testified that the victim had said that the defendant "hadn't done anything" and that her daughter "just wanted to stop us fighting, she didn't like the way he was smacking me." The mother further testified that if the victim testified that the defendant had "admitted doing it," the victim would not be telling the truth.

Alex David Schwarz, an officer in the Papillion Police Department, was the first policeman to arrive at the defendant's residence on June 10, 1987, after the victim's mother had called the police and reported a sexual assault. When Schwarz asked the victim's mother about the report of a sexual assault, she replied that "something had happened to her daughter, Jennifer." Schwarz then asked Officer Glesmann to interview the victim.

After Schwarz had interviewed the victim's mother about the assaults upon her, he arrested the defendant. Before taking the defendant to jail, he advised the defendant as to his *Miranda* rights. The defendant then made a statement about what had happened that day and said that the victim's mother had accused him of molesting her daughter, the victim. At that time the defendant became upset and said, "she knows not to say things of that nature because it gets him very upset, knowing what's happened previously before to his father." Schwarz was then asked:

Q. And just a point of clarification. What did Mr. Andersen say about his father? What he said, what did he say about his father?

A. Mr. Andersen stated that his father was currently in the Nebraska state pentiteniary [sic] for sexual assaulting a child.

MR. GARVEY: I'd object, move to strike, relevance.

THE COURT: Overruled, it's received.

Before trial, the defendant had made a motion in limine in an effort to prevent any reference to the fact that the defendant's father had been convicted of a similar offense. The trial court had sustained the motion except as to any statement by the defendant.

The defendant argues that the statement was not relevant and was highly prejudicial. Although the statement may have

tended to explain why the victim's mother had testified that the victim was not telling the truth and why she had asked the children to lie about what had happened, it had no direct relevance as to whether the sexual assault charged had taken place. It was a collateral matter, its prejudicial effect far outweighed its probative value, and it should have been excluded under Neb. Rev. Stat. § 27-403 (Reissue 1985).

Officer Estes testified concerning his interviews with the victim and her brother, John. Estes testified that after June 10, 1987, he received telephone calls from the victim's mother almost daily, requesting that he reinterview the children. On June 17, 1987, the victim and her mother came to the LaVista Police Department and were interviewed by Estes. According to Estes, the victim's mother

> informed me that she thought that everything that the children had said was not totally correct. She indicated that the children had not told the truth, that I should reinterview them to find out what the real truth was. She even at one point indicated that the children, Jennifer in particular, was more of a perpetrator with regard to sexual activity occurring between herself and Mr. Andersen.

He further testified that

> she'd overheard the children via a stairwell in their house talking about — I believe John accusing his sister, Jennifer, that "You're at fault," that "You were the one who caused all this trouble," that "Dad," referring to Mr. Andersen, "would not be in this trouble had it not been for you. You lied."

He then testified that he had talked with the victim's brother, John, on June 15, 1987. According to Estes,

> A. John came to me in the evening at my residence and told me that his mom wanted he —
>
> MR. GARVEY: Objection, hearsay.
>
> THE COURT: Overruled.
>
> Q. (By Mr. Irwin) You can go ahead, Officer.
>
> Q. John came to me and told me that his mother was telling both himself, his sister Jennifer, and Debbie, the littler sister, to lie about the incident.
>
> MR. GARVEY: Move to strike, Judge, it's hearsay.

THE COURT: Overruled.

Q. (By Mr. Irwin) Did John tell you anything else that day on the 15th?

A. Yes, he told me that she wanted Mrs. — Mrs. Andersen wanted the children to lie about the incident, stating that everything that had been said previously was not the truth, that, in fact, the touching that had occurred that night was — or that morning was Mrs. — Mr. Andersen touching Jennifer on the stomach above the panty line in an attempt to wake her up.

MR. GARVEY: I'd object, Your Honor, and move to strike.

THE COURT: Overruled.

The testimony concerning the interview with John on June 15, 1987, was clearly hearsay and not admissible under any of the exceptions to the hearsay rule.

The errors in the admission of evidence concerning the conviction of the defendant's father and the interview with the victim's brother require that the judgment as to count I be reversed and that count be remanded for a new trial. As to counts III and IV, the judgment is affirmed.

AFFIRMED IN PART, AND IN PART REVERSED
AND REMANDED FOR A NEW TRIAL.